### THE MORRIS CANAL AND BANKING COMPANY ads. THE STATE.

Wherever the authority or the interest of the state, in the prosecution of any of the great purposes of government, comes into conflict with individual rights, and the state, either in its corporate name, or by its appropriate agents, is the *actor* in carrying into execution those purposes, *then* the name of the state may be properly used by an individual complaining of, and seeking to be relieved against *its* proceedings. In such cases, the state yields a tacit consent to be *made plaintiff in certiorari*, where that is the proper remedy, for the purpose of affording the citizen an opportunity of being heard in this court, and having the error corrected, if any has been committed.

If the only objection to a writ of certiorari is, that the name of the state has been unnecessarily and improperly employed, this court will not quash the proceedings, but will direct the entries in the minutes of the court, and the endorsement on the writ to be amended.

If a certiorari be directed to the right person, though by a wrong name, he alone can object, and if in fact he makes a proper return to the writ, a third person cannot complain of the misnomer.

A writ of certiorari must be directed to the person who, in legal contemplation, has the custody of the record, or proceedings, required to be certified; and hence this court quashed a writ of certiorari directed to the commissioners appointed to appraise the land on the line of the Morris canal.

It is no sufficient return to a writ of certiorari commanding the persons to whom it is directed, to certify and send a certain estimate and appraisal of the value of land, &c. to send up to this court copies only. When the object of the certiorari is not to affect the record itself, or where the court, awarding the writ, cannot hold plea of the record, there the tenor only is to be certified. But when the certiorari is in

the nature of a writ of error, and the court is to hold plea of the record, the record itself is to be sent up, to the end that the judgment of the court may conclude the record.

Where the injured or complaining party cannot himself, upon legal principles, be the plaintiff in certiorari, (as he cannot be when the state is either actually, or in legal contemplation, a party to the proceedings,) there the writ must be issued at the suit of the state, upon the application of the individuals seeking protection, or relief, who are then relators, or prosecutors, or are defendants in certiorari according to the nature of the case. In all such cases, the writ may be issued at the instance of any one, or more, of any number of persons who may be affected by the record, or proceeding below, however several or distinct their respective rights, or interests, in the matter, may be; and the court may then reverse, or set aside, the order, judgment, or proceeding, complained of, as to any one or more of the prosecutors, or confirm the same as the law of the case may require. But if the parties seeking relief can have a certiorari in their own names, as plaintiffs on the record, they must prosecute it according to their rights. If more than one person is concerned, and they are jointly bound by the order, or judgment below, they must *all* unite, and prosecute a joint certiorari, (unless by summons and severance, or rule of court in lieu thereof) and the court must then either affirm or reverse the whole matter. On the other hand, if the order or proceeding below, though it constitutes but one entire record, affects them *severally*, and not *jointly*, they must seek their remedies by separate writs of certiorari; they cannot join in one writ, and then have divers trials, and divers judgments in that one suit.

At the November term, 1832, on motion of *N. Saxton*, the following writ of certiorari was allowed.

"The state of New Jersey to Jehu Patterson, William N. Shinn, and John Clement, Esquires, commissioners appointed under the act entitled "An act to incorporate a company to form an artificial navigation between the Passaic and Delaware rivers," passed the 31st day of December, 1824, greeting: We being willing, for certain reasons, to be certified of a certain "estimate and appraisal of the value of lands and damages to the several owners, proprietors, or parties, interested in the lands, waters and streams, required and occupied by the Morris Canal and Banking Company, for the purpose of carrying into effect the object set forth by the said act," and the "entries of your determinations thereon;" and all other the proceedings had before you touching and concerning the same—do command you that under your hands and seals, distinctly and openly, you certify and send to our justices of our Supreme Court, to be held at Trenton, on the last Tuesday in February next, the said estimate, appraisal, entries, determinations and

proceedings above mentioned, as freely and entirely as before you they remain, by whatever names the parties may be called therein, together with this writ—that we may farther cause to be done therein, what of right, and according to law, shall be fit and requisite to be done. Witness Joseph C. Hornblower, Esquire, Chief Justice of our said Supreme Court at Trenton, the second Tuesday of November, in the year of our Lord, one thousand eight hundred and thirty-two.

ROSSELL, Clk.

The writ was endorsed as follows:

Prosecutors of this certiorari.

Lowrance Lomerson, Michael Rosebury, Charles Ihrie, Christopher Bowers, Godfrey Hulsizer, Martin Hulsizer, Daniel Hulsizer, Henry Snyder, William McKinney, Stephen Warne, Peter Willer, Adam Wangin, Newbold Woolston, David C. Davis, John Stewart, Samuel Stewart, Simon S. Vanness, James A. Vanduyn, Evert H. Vanness, Albert Terhune, William Ryerson, Peter Courter, Jotham Richards, Peter E. Merselius, Edo E. Merselius, Timothy J. Darcy, Matthias Kitchell, Nathaniel Saxton.

The following is the return.

"The appraisal, entries, determinations and proceedings within mentioned, we do certify and send to the honorable the justices of the Supreme Court in the schedule hereunto annexed, as within we are commanded. Witness our hands and seals.

JEHU PATTERSON,    L. S.
JOHN CLEMENT,    L. S.
WILLIAM N. SHINN,    L. S.

The schedule consists of

1. Notices of the meeting of the commissioners and proofs of publication in the Jerseyman and New-Jersey Eagle.

2. Original papers and claims filed with the commissioners by several of the prosecutors.

3. Copies of the appraisal, and valuations, and acknowledgments thereof, by the commissioners filed in the clerk's offices of Bergen, Essex, Morris, Sussex, and Warren, certified under the hands and seals of the clerks of said counties respectively."

At a subsequent term, a rule to show cause why this writ and

return should not be quashed, was granted, and at the last term this rule was argued.

*I. H. Williamson*, in support of the rule.

The certiorari in this case ought to be quashed:

1. Because it is prosecuted in the name of the state as plaintiff. The name of the state may be used in certain cases, but it is only when the public interest, order, or economy, is concerned. It may be used in cases of assessment, of taxes; so in case of warrants for militia fines, or the usurpation of an office, or franchise, or other cases, in which the public are interested, and then the state ought to be made plaintiff, and the individual who seeks relief, defendant. In the case of *The State* v. *Kirby*, 2 *South. R.* 835, which was to bring up a warrant for militia fines, the rule is correctly laid down, that the name of the state cannot be used at pleasure, but only when the public interest, economy, &c. are concerned.

This is a private controversy between the canal company on the one side and a number of individuals on the other. They appeared as parties before the commissioners; the state is not affected by it, and it is improperly throwing into the scale of the prosecutors the weight and influence of the state. There might be some propriety in using the name of the state, if this was a certiorari to bring up the survey of the route, or laying out of the canal itself, but this is not the case. This certiorari is merely to bring up the proceedings of the commissioners appointed under the statute to appraise the value of land taken for the canal, and damages sustained by the owners respectively.

This case is similar to that of *Kingsland & others* v. *Baldwin*, 1 *Halst. R.* 161, where the certiorari was prosecuted in the name of the party complaining, and not in the name of the state.

2. The certiorari is improperly directed in being addressed to the persons who made the appraisement by the name of commissioners. It ought to have been by the name of appraisers, as they are called in the act, *Har. Comp.* 95, 96.

3. The certiorari is misdirected in being addressed to the commissioners, if rightly named, because they are not in possession of the record, and cannot return it. The statute directs it to be filed in the office of the clerk of the county, there to re-

main as a public record. A certiorari ought to be directed to an officer known to have the custody of the record, and upon a suggestion that he has the record, 4 *Vin. Ab.* 339, *S.* 5, *B.* 3. The certiorari ought to have been directed to the clerk of the county, because the record is filed in his office; *Rex* v. *Inhabittants of Warminster*, 1 *Stra.* 470; *The State* v. *Coleman*, 1 *Green, R.* 98. When the writ is properly directed, nothing is removed by it; 1 *Bac. Ab.* 592, *Cert. J.*

4. The return is bad because the record itself is not returned, but only a copy. In return to a certiorari, the record, or the tenor of it, is to be certified according to the requirement of the writ. If the record is required, nothing else will answer it; 1 *Salk.* 147; 2 *Salk.* 493.

5. The certiorari is bad because it is prosecuted by a number of individuals who have separate and distinct interests, and no joint interest in the matter. One landholder has no interest in the claim another has against the company; their damages are separate; the landholders cannot join in a suit against the company for injuries done to them separately. Neither can they join in a certiorari. Each landholder must bring a certiorari in his own name, and bring up so much of the proceedings as relate to his own case, and each case must be governed by its own peculiar circumstances.

Neither the parties nor court can get along in this way. The certiorari is prosecuted by a number of individuals. Who is to be the actor? How are errors to be assigned? By each one for himself, or one for another? How are they to take affidavits? How are the court to render judgment? They can give no judgment, but to affirm or reverse; *Litle* v. *M'Vickars*, 6 *Halst. R.* 44. They cannot set aside the proceedings in one case and not in another. If any, the whole must be set aside together, and then every landholder, of whom there are near one thousand, may bring suits against them and ruin the company. The reports are filed in five different counties; they cannot all be brought up together; neither can all the landholders, in the same county, join in prosecuting one certiorari. Each landholder must prosecute a separate certiorari, and bring up his own particular case.

Although the writ was allowed on a rule to show cause, it was at the peril of the party. We laid by, that we might bring up the matter in a tangible shape.

*Saxton*, contra.

On the first application for this certiorari, the defendants, being apprized of it, appeared by counsel and opposed the motion for want of regular notice. The objection was overruled. The court, however, considering this " a novel case of great importance in which many questions might arise as to the most correct course of proceeding, thought proper to direct a rule to show cause ; " 7 *Halst. R.* 367. On the argument of this rule, various questions as to the proper course of proceeding, to wit, whether the writ should be prosecuted on behalf of several landholders, or by one only ; what should be removed by it ; whether the whole proceedings of the commissioners, or only part, affecting an individual landholder ; were discussed by the plaintiff's counsel. The defendants, then, had an opportunity of interposing objections, but declined arguing the matter. The certiorari was then allowed by the court in its present form. After this, we insist all questions as to the writ ought to be considered settled, and the present discussion confined to the sufficiency of the return. Instead of which we have now to encounter a series of objections.

1. It is objected, that the name of the state has been improperly used, because (it is said) the state has no interest in the matter.

The name of the state may be used as plaintiff in certiorari, not only in cases where the state is directly interested, and prosecutes by the attorney-general, but in others where the state is only nominally concerned, and the certiorari is *prosecuted by individuals ; the King* v. *Tindall and others*, 4 *Burr. R.* 2458. The cases cited for the defendant do not support the objection. *Kingsland and others* v. *Baldwin*, 1 *Halst. R.* 61, arose upon a private statute to enable the plaintiffs to build a dam for the purpose of improving their own property and the question as to using the name of the state was not raised. In *The State* v. *Kirby*, 2 *South. R.* 835, the name of the state was used, and a motion made to quash, for that among other reasons, and overruled.

In the English books we find the name of the king has been frequently used as plaintiff in certioraris prosecuted by individuals, to bring up and review the proceedings of inferior jurisdictions, or officers, acting in a summary manner; in some of which cases the state appears to have had an interest, and *in others not; The King* v. *Tindall,* 4 *Burr. R.* 2458 ; *The King* v. *Inhabitants of Glamorganshire,* 12 *Mod. R.* 403 ; *Rex* v. *The Corp. of Winchelsea,* 2 *Lev. R.* 86 ; *Rex* v. *The Mayor &c. of Liverpool,* 4 *Burr. R.* 4244 ; *Rex* v. *Capon,* 3 *Du. & Ry.* 36.

In this court, the name of the state, as plaintiff in certiorari, has been used to bring up a tax warrant ; *The State* v. *Wilson,* 1 *Pen. R.* 300 ; and warrants for militia fines ; *The State* v. *Kirby,* 2 *South.* 835 ; *The State* v. *Atkinson,* 4 *Halst. R.* 271.

In these matters, the state may be considered as having some interest, as relating to the public revenue, or the public defence. The name of the state has also been used to bring up decrees of the Orphan's Court, on the settlement of accounts of executors and administrators ; *The State* v. *Mayhew,* 4 *Halst. R.* 70 ; *The State* v. *Handford,* 6 *Halst. R.* 71 ; in which cases it is difficult to perceive any interest the state could have, other than its duty to see the law faithfully executed. For that purpose it calls into exercise the superintending power of this court, to review the proceedings, and correct the errors, of inferior jurisdictions, acting under special authority, and proceeding in a summary manner, and not according to the course of the common law, in cases where there was no regular suit, or parties plaintiff and defendant below, and no remedy by way of appeal is given. These appear to be the only features common to all the cases where the name of the state has been used as plaintiff in certioraris prosecuted by individuals : and to show what is meant by the state being nominally interested—that is, that the state is not interested in fact, or reality, but only nominally, for the sake of the remedy, in cases where no other remedy is provided. Hence it appears not to be essential that the state should have any direct interest in the matter.

In *The State* v. *Kirby,* it was said by the court, that the name of the state might properly be used as plaintiff, where the public interest, public peace, order and economy, public benefit, public convenience, and public safety are concerned.

These principles are certainly broad enough to embrace another class of cases, relating to highways, in which the public interest, benefit, and convenience, are immediately concerned. We accordingly find the name of the state has long been used in this court as plaintiff in certiorari, to bring up matters of public highway; *The State* v. *Henly*, *Coxe R.* 261; *The State* v. *Vanderveer and others*, 2 *Halst. R.* 38; *The State* v. *Woodward*, 4 *Halst. R.* 21; *The State* v. *Salem Pleas*, *Ib.* 246.

To this practice I know of no exception. In Massachusetts, it is said, the practice, since 1805, has been to bring all certioraris, in matters of public highway, in the name of the state; 5 *Davis' Ab.* 92, 93; 2 *Mass. R.* 125, 170, 489; 3 *Mass. R.* 188; 4 *Mass. R.* 446.

Turnpikes, railroads, and canals, are public highways, and we find the name of the state used as plaintiff in a certiorari, prosecuted by a number of individuals, to bring up proceedings relating to a turnpike, in which the corporation were made defendants, and the names of the prosecutors directed to be endorsed; *The State* v. *The Newark and Pompton Turnpike Company*, 1 *Pen. R.* 338; 2 *Pen. R.* 537.

So the name of the state has been used to bring up the proceedings of a corporation in the exercise of a franchise affecting individuals; *The State* v. *The Corporation of New-Brunswick*, *Coxe R.* 393.

We are fully sustained by these cases. The Morris canal is a public highway, so declared to be in the charter. The state has the same interest in the canal which it has in a turnpike, or other public highway. In all, the public interest, benefit, and convenience, are concerned. Besides, it has a reversionary interest in the canal itself, and lands taken for its use, which, at a given period, is to become " the sole property of the state." *Har. Com.* 103. The canal company, like a turnpike company, or the corporation of New-Brunswick, have, in their hands, a franchise, or branch, of the sovereign authority. It is the duty of the state to see that this is not abused. The franchise, of the exercise of which we complain, in this instance, is the highest act of sovereign power of which the state is capable; the

*eminent domain*, or right of taking private property for public use, which nothing but *state necessity can* justify. We complain of the act of the commissioners, by which the lands of the pro-secutors were taken from them without their consent, and their estate and interest therein, vested in the canal company, and ultimately in the state itself; and we insist that the state has not only a nominal, but a direct, and positive, interest in the matter, and is under the highest obligation to lend its name, and afford every facility for reviewing the proceedings of the com-missioners.

2. *Another objection* is, that this certiorari is prosecuted by a number of individuals, having separate and distinct interests, and no joint interest in the matter in controversy; and it is in-sisted, that each landholder must prosecute a separate certiorari, and bring up so much only of the proceedings as relate to his own case. This principle, if sustained, may enable a corpora-tion to ride over the interest of landholders, subdue all oppo-sition, and silence all complaints. Its effect, in this case, would be to split up the controversy, into as many separate suits as there are persons affected by the proceedings of the commission-ers—all growing out of the same record (the report) and de-pending on the same principles. Many individuals (when oth-ers were equally concerned) would be deterred from entering, single handed, into a controversy with a powerful corporation, possessing an immense capital, and having the most eminent counsel in the state already retained in their behalf, in which the expense might reasonably be expected to exceed the amount of the injury sustained, unless very considerable indeed. To re-quire this where the whole may be settled in one proceeding, as we apprehend it may, in this case, would, in many instances, amount to a denial of justice. The law abhors multiplicity of action, and this is a strong case to exemplify the wisdom of the rule.

Another consequence would be, that from the peculiar circum-stances of the case, and mode of proceeding necessarily adopt-ed by the commissioners, who, in passing along the line of the canal, decided, in some cases, upon a mere view, and in other cases, without discussion, upon principles and rules adopted at other times and places; if each prosecutor was confined to

Morris Canal ads. The State.

what occurred in his own case, he would be so crippled in the investigation, as to be unable to exhibit his case fully to the court, or show the grounds of the injury he had sustained.

Both branches, however, of this objection are unfounded. Admitting that the prosecutors have separate interests in the lands taken, and damages awarded, yet these are not the matters in controversy in this case. This is not a suit for the recovery of the lands, or damages; or an appeal from the determination of the commissioners as to the amount awarded. It is a proceeding entirely different in its nature. The matters in controversy in this case, are the constitutionality of the charter, as it relates to the office of these commissioners; their authority to act in the premises; the legality of their appointment and proceedings. The remedy sought is, not to enforce, or to revise, these proceedings, but to annul and set them aside. In all this, the prosecutors have a joint and common interest. They have the same community of interest that exists in every case where a certiorari, in the name of the king, or the state, has been prosecuted at the instance, and for the benefit, of a number of individuals—that is, they are all interested in, and affected by, the same record, or proceeding.

The charter contemplates but one report. It does not intend that each determination and appraisal shall be separately verified, but directs that the whole, after being regularly entered in a book, or books (if need be) shall be verified by the certificate and acknowledgment of the commissioners, and filed in the clerk's office of the county where the lands lie; and if the lands on which they might act, were situate in more counties than one, it was intended that duplicate originals, or books, should be sent to each of those counties. The whole report was intended to form but one record.

There are many cases, in the English books, of certioraris to bring up records and proceedings affecting a number of individuals, yet, in no instance, was it determined that each one must prosecute a separate certiorari, and bring up so much of the record only as related to his own case; *The King* v. *Harman, And. R.* 344; *The King* v. *Tindall,* 4 *Burr. R.* 2458; *The King* v. *Inhab. of Glamorganshire,* 12 *Mod.* 403; 5 *T. R.* 279; *The King* v. *The Corp. of Winchelsea,* 2 *Lev.* 86; *the King* v. *Bailiffs,*

*&c. of Liverpool,* 4 *Burr.* 4244; *Rex* v. *Casson,* 3 *Du. & Ry. R.* 36; *Case of the Town of Winchelsea, T. Ray. R* 448.

The cases in our own state leave. no doubt as to the right or any number of individuals interested in any one proceeding like the present, to join in prosecuting a certiorari, in the name of the state, to redress their common grievance and remove all difficulty as to the course of proceeding; *The State* v. *Wilson,* 1 *Pen. R.* 300; *The case of the Newark and Pompton Turnpike Company, Ib.* 339, 537; *The State* v. *Kirby,* 2 *South.* 835; *The State* v. *Atkinson,* 4 *Halst.* 271; and other cases in this court not reported; *The State* v. *The Clerk of Sussex; The State* v. *The North River Meadow Company.*

In all these cases, the certioraris were prosecuted by a number of individuals, the whole record and proceedings brought up together, and decided on in one suit. This is the proper course for the reason assigned in the case of *The State* v. *The Justices of Middlesex, Coxe R.* 252.

If a contrary course had been pursued, and part only of the proceedings brought up, the certiorari ought to have been quashed for that reason, and a new one ordered to bring up the whole proceeding, for without the whole record, complete justice could not be done; 4 *Mass. R.* 446.

But it is asked how the certiorari is to be prosecuted; who is to be the actor; are the prosecutors to summon and sever; how are they to assign errors, or take affidavits? How is the court to render judgment? And we are told they can only reverse, or affirm, and cannot reverse in one case, and affirm in another. Wherever the name of the state is used as plaintiff in a certiorari to review a summary proceeding, it follows that the state is nominally the actor, and is represented by the attorney prosecuting the suit; he assigns errors, takes affidavits, &c. in behalf of any number of those interested who choose to come in and prosecute. In such cases there is no such thing as summons and severance; that principle applies only to parties in suits proceeded in according to the course of the common law; no other judgment is required of the court in this case but to reverse, or affirm: but they have power to affirm what is good, and quash the residue, or reverse as to the prosecutors, or any one or more of them, and affirm the residue; 2 *South. R.* 840, 42; 7 *Com. Dig.* 850, *tit. art.;* 1 *Sid. R.* 145.

3. It is objected that the certiorari is misdirected in being directed to the officers who made the appraisal, by the name of commissioners, instead of *appraisers.* Who they were, and what their office was, appears sufficiently in the writ, which mentions their names, refers to the statute under which they were appointed, and describes the duty they were to perform. Whatever they may be called in the act, the certiorari is properly directed to them by the name of "commissioners," which is a technical term, of known legal significance, descriptive of any officer, or person, appointed under a statute to perform any duty prescribed by law; 1 *Jacob L. D.* 507, *tit. com.*

4. It is also objected that the certiorari ought not to have been addressed to the commissioners, who were not in possession of the report, but to the clerk of the county in whose office it was directed to be filed. The certiorari was properly addressed to the commissioners who made the report, no time being appointed for filing it in the office. If known to have been filed with the clerk before issuing the writ, it might have been directed to him, but if directed to either, and the record is returned, it is well; 1 *Bac. Ab.* 570, *tit. art. F. G. &c.* If a certiorari be misdirected, no third person can object to it if the proper officer, in whose possession the record was, waves the objection, and returns the record upon the writ; *Daniels* v. *Phillips,* 4 *T. R.* 499.

It is said if the writ be misdirected, nothing is removed by it, and 1 *Bac. Ab. tit. cert. J.* is relied on. This is a mere *dictum* of the author, referring to the authorities above cited. 4 *Vin.* 339 is cited to prove that the certiorari ought to go to a person known to have the record. This refers to an old case (1763) *Style R.* 371, and does not prove that it might not be directed to the officer who made the record, which, if he be living, is the most natural and proper direction. If he has parted with the record, but procures an authentic copy and returns it upon the writ, it is sufficient; 2 *T. R.* 285. Here we have the record returned by the officer who made it, duly certified also by the clerk in whose office it is deposited.

5. In the last place it is objected that the certiorari requires the record itself; and the tenor, or a certified copy only, is returned—which, it is said, is not sufficient; that when the record

is required to be used in another case, a copy will answer; but when the court are to hold plea of it, the record itself must be. returned; 1 *Bac. tit. art. J.* This was law in England, and perhaps so here, while the practice prevailed of making up every record of a judgment, or proceeding, on a separate roll of parchment, which could be sent whenever required, but is now obsolete. The form of writs of error and certioraris in the nature of writs of error, still continues, as before, to require " the record and proceedings " to be sent up; but since the practice was changed by our statute, which dispenses with judgment rolls, and directs all judgments to be recorded and signed in books provided for the purpose, *Rev. L.* 423, it has become impracticable to send up the original record, and it is not now required. A certified copy, which answers every purpose, is considered as the record, and acted on accordingly; 2 *South.* 542.

*G. D. Wall,* argued on the same side.

I *H. Williamson,* replied.

At this term, the following opinions were delivered.

HORNBLOWER, C. J.   I. It is objected that the state has been improperly made a party to this suit.

The name of the state cannot, with legal propriety, be used upon every occasion, and therefore it ought not to be introduced upon the record, as a party, at the mere pleasure of every person who may think proper to use it. There ought to be, and one would suppose our books would furnish, some known and settled rule on the subject; yet such has been the diversity of practice in relation to this matter, that the reports afford no guide to the profession, but are rather calculated to distract and mislead the practitioner.

Perhaps, from the very nature of the writ of certiorari and the ever new and varying occasions for its use, no very definite and precise rules can be prescribed in relation to the parties in whose names as plaintiffs, or against whom as defendants, it should be issued; yet by a little attention to general principles, and legal analogies, much uncertainty and litigation may be avoided in this matter.

In *The State* v. *Kirby,* 2 *South.* 835, the Chief Justice (Kirkpatrick) said, " the state can be made plaintiff only when the public interest, the public peace, or the public order and econo-

my are concerned." But it is easier to lay down a general pro-position, than to carry it out in practice, and apply it to partic-ular cases. For instance, it has been argued that the state is al-ways interested to see that the laws are obeyed, and properly executed; and therefore if corporations, commissioners, or oth-er persons, acting under a particular statute, or exercising a special authority, mistake their duty, or act unlawfully, the state, watchful over the rights of individuals, and bound to pro-tect them, steps in to the aid of the citizen, and tenders the use of its name in the prosecution, or defence, of those rights. But the same course of argument would lend the name of the state to every individual, in every action, he might think proper to bring against any *public officer*, or person acting under color, or authority, of law. The state has an interest, in a political sense, in every thing done within its jurisdiction. Public peace, secu-rity, order and economy, are more or less involved in every dis-pute and lawsuit that happens. Why not, then, lend the name of the state to every man who seeks to enforce a contract with, or to recover damages from, his neighbor for an injury done to his person or property? But, I apprehend, the state is never properly plaintiff in certiorari, where the object of the writ is to relieve individuals in matters affecting their private rights; unless the proceeding complained of has been instituted and carried on, by the state, in its corporate and political character, and for political or municipal purposes—in other words, the name of the state cannot be used, as plaintiff in certiorari; ex-cept in those cases in which the individual, for whose benefit, or relief, it is sued out, cannot, upon legal principles, be himself the plaintiff; or where the state or the whole community have some rights, or interests, in the subject matter; not specula-tive or political, but direct and positive rights and interests, which are to be affected one way or the other. This will be found to embrace an extensive class of cases, relating to the public peace, the public revenue, the public defence, common and public highways, and many other matters of general in-terest and concern. In short, wherever the authority, or the interest, of the state, in the prosecution of any of the great pur-poses of government, comes into conflict with individual rights, and the state, either in its corporate name, or by *its* appropri-

ate agents, is the *actor*, in carrying into execution those purposes ; *then* the name of the state may be properly used by an individual complaining of, and seeking to be relieved against *its* proceedings. In such cases, the state yields a tacit consent to be made plaintiff in certiorari where that is the proper remedy, for the purpose of affording the citizen an opportunity of being heard in this court, and having the error corrected, if any has been committed.

The case of *The State* v. *Kirby*, 2 *South.* 835, is at once an authority for, and an illustration of, the rule I have attempted to prescribe. The Chief Justice, in that case, says—" the certiorari is to be entitled at the suit of the state where its object is to bring into review, proceedings which arise upon municipal regulations, made for the public benefit, the public convenience, or the public safety. In the execution of these regulations, the state is always the *actor*, carrying them into effect, either in its ordinary courts of justice, or by special commissioners, or agents, appointed for that purpose, &c." In the same case it was objected that Kirby, the justice, ought not to have been styled defendant, but that the writ ought to have been entitled as between the state, plaintiff, and the person charged with the fine and seeking relief, defendant ; and though the chief justice considered it so much a matter of form as not to be fatal, yet he and Mr. Justice Southard concurred in opinion that the justice was improperly made defendant—that it being a case in which the state was properly plaintiff, the writ ought to have been entitled against the individuals who were seeking to avoid the fines—they, having been proceeded against by the state, as delinquents, could not turn round and use the name of the state, in a suit against the justice, or any body else. to reverse those proceedings. So, I apprehend, in this case, the certiorari ought to be between the same persons who were the parties in interest, and in action, below. If the state, in its corporate and political character, had any thing to do in the proceedings complained of, it was a matter between the state on the one side, and the landholders on the other. They cannot change the nature of the controversy, nor the parties to the proceeding, by bringing a certiorari ; they cannot involve the state in a law suit with the Morris Canal and Banking Company, to redress an injury

done by them by the latter. The state has provided legal tribunals, and proper forms of action, in which its citizens may protect their rights, or redress their wrongs : but it will not consent to become the gladiator, or legal champion, of any individual.

I do not mean to say that in every case in which the state is properly plaintiff in certiorari, the person for whose benefit the writ is issued, must be styled defendant ; nor do I understand that such was the meaning of the court in *The State* v. *Kirby ;* neither do I suppose, as Chief Justice Ewing, from what he said in *The State* v. *Hansford*, 6 *Halst.* 75, seems to have thought, that the court, in the former case, did not intend to establish a general rule, but only to decide that, in that particular case, the persons seeking to avoid the fines ought to have been made defendants in certiorari. On the contrary, it appears to me that the court, in *The State* v. *Kirby*, intended to lay it down, as a general rule, that whenever the party seeking relief by the writ was the defendant, or person acted upon in the proceeding below, and the state was the plaintiff, prosecutor, or actor, in the matter, by its appropriate agents, seeking to enforce some penalty, or duty, against the individual ; then the certiorari, whether issued at the instance of the state, or the citizen, is always to be entitled as between the state, plaintiff, and the party complaining, defendant. That this is the true rule, I think there can be no doubt : it is in perfect analogy with the practice in other cases. In all indictments and criminal proceedings, the state is the original prosecuting party ; yet in certioraris, to remove such proceedings, the state is plaintiff, and the defendant below invariably the defendant in certiorari. So, too, in England, certioraris in settlement cases, and other matters touching the poor, are entitled the King v. the party suing out the writ, and seeking to avoid or defeat the order or proceeding below ; 1 *Burr. R.* 52. This rule may not have been uniformly followed in England ; but in proceedings by, or in behalf of, the crown, affecting individuals by name, it will generally be found to have prevailed ; as in *Rex* v. *Manning*, 1 *Burr. R.* 377, an act of parliament had authorized the surveyor of the highways to dig gravel, &c. upon lands in the occupation of Manning, upon an order of the sessions for that purpose. The certiorari to remove such an order was entitled as above—Manning, the com-

plaining party, being styled defendant. The case of *Rex* v. *King & al.* 2 *D. & E.* 234, cited by Chief Justice Ewing, in *The State* v. *Hanford*, 6 *Halst.* 75, as conflicting with this rule, will not, perhaps, upon examination, be found inconsistent with it. That case rather belongs to a numerous and ever occurring class of cases in which, though the state must be plaintiff in certiorari, no particular individual can, with strict legal propriety, be styled, or treated, as defendant on the record. I allude to such proceedings, on the part of the state, or under its authority, as affect the community in general, or the inhabitants of a particular county, or district of country—such as the Middlesex court house election case, *Coxe,* 240 ; the case of Anderson, sheriff elect of Hunterdon county, *Coxe,* 318; the by-law of the corporation of New-Brunswick, *Coxe,* 393 ; the boundary question between counties, 1 *Green, R.* 98 ; and to these may be added orders and proceedings of boards of assessors, and boards of freeholders, relating to taxes, county bridges, &c. and other matters of a public and general nature. The court did not, in the case of *The State* v. *Kirby,* and I do not, in this case, intend to carry the rule so far as to embrace the class of cases just referred to. In them the rules ought to be entered, and all the proceedings entitled as between the state on the one side, and the corporation, commissioners, officers, or other persons, whose acts are complained of, on the other.

But the question, in this case, is, whether the name of the state has been properly made use of as plaintiff in certiorari ? I am of opinion it has not. If the landholders have been injured at all, they have been injured by the Morris Canal and Banking Company. It is a matter of private and individual right, in which the state has no other interest but what it has in every other matter between citizen and citizen. The company are bound to pay for the lands they take, and the damage they do, in constructing the canal. The law has constituted a tribunal to decide between the company and the landholders : the individuals composing that tribunal were to be designated upon the application of, and certain preliminary steps to be taken by, the company (*see charter,* 6 *section, in Har. com.* 95.) The appointments have been made, and the persons appointed, have acted in the premises. Some of the landholders are dissatis-

fied, as well with the doings of the appraisers, as the manner of their appointment. What does all this present but a matter of private and individual interest and dispute? The company are responsible, as well for the regularity of the appointment of the appraisers, as for the legality of their proceedings; and I see nothing to prevent a direct appeal to this court, by certiorari, at the suit of the complaining party, against the Morris Canal and Banking Company, without using the name, or invoking the aid, of the state in any other way than by the command of its writ. My opinion, therefore, is, that the name of the state has been unnecessarily and improperly employed in this case. If, however, this was the only objection, I would not quash the proceedings, but direct the entries in our minutes, and the endorsement on the writ, to be amended, *The State* v. *Kirby*, 2 *South.* 835; *The State* v. *Hanford*, 6 *Halst.* 76.

But II. Exception is taken to the direction of the writ, first because the persons to whom it is addressed are called commissioners instead of appraisers; and secondly, that it ought to have been directed to the clerks of the counties in which the lands lie, and not to the appraisers.

The first branch of this objection is not well founded. If the writ has, in fact, been directed to, and returned by, the proper persons, it is not to be defeated upon a ground so purely technical. It is true the statute speaks of the persons who are to make the appraisement as appraisers; *Har. Com.* 95, *sec.* 6; but I do not think it was the intention of the legislature to give them a legal cognomen, by which only they should be known in law. The term " commissioners " is a legal and appropriate designation of such persons as have a commission, letters patent, or *other* lawful warrant, to examine any matters, or to execute any public office, &c. 1 *Jac. Law Dic.* 507. But if a certiorari is directed to the right person, though by a wrong name, he alone can object, and if, in fact, he makes a proper return to the writ, a third person cannot complain of the misnomer; *Daniel* v. *Philips*, 4 *T. R.* 499.

But the second branch of this exception, viz. that the writ, or writs, ought to have been directed to the clerks of the different counties in which the lands lie, is of graver import.

When this court is called upon to exercise its superintending

power over inferior and summary jurisdictions, it not unfrequently becomes a question of some difficulty to know to whom its writ should be directed. In 4 *Vin. Abr.* 339, *cert. B.* 3 *pl.* 5, it is said, " a certiorari to remove a record ought not to be made but to an officer *known* to have the custody of the record, and upon a surmise that he hath such a record in his hand." The question, then, is, who, in legal contemplation, has the custody of the record, or proceedings, required to be certified in this case ? To answer this question, we must have recourse to the statute under which the proceedings have been conducted; and there we find it enacted as follows, viz. " the appraisers, or a majority of them, shall make regular entries of their determination and appraisal, in a book, or books, to be by them kept for that purpose ; and shall certify the same under their hands and seals, acknowledging the same, &c. and shall cause such book, or books, to be filed in the office of the clerk of the county in which the lands may be situated ; *there to remain* a public record." *Har. Com. sec.* 6, 96.

Some doubt was suggested, on the argument, whether the appraisers had actually filed their proceedings in the clerk's office when the certiorari in this case was sued out; and it was argued, that as the statute fixed no time within which the appraisers should file their proceedings, the prosecutors of this writ were not bound to know that they were actually filed in the proper offices. The answer, however, is obvious : they sued out the writ at their peril. If they directed it to persons who had not the record, it was their own mistake : not only so, for if they sued out the writ before the commissioners had actually filed their proceedings in the proper offices, they were premature. Until that was done, the whole matter was *in fieri* ; it was incomplete, and had no legal efficiency. It would be like the case of freeholders, appointed to review the return of a road, who, though they had made out and signed their certificate, had not yet returned it to the court. In such a case, we have refused a certiorari; 3 *Halst. R.* 139. *The King* v. *Eaton* 2 *T. R.* 285, was cited to show that a certiorari may be directed either to the person who made the document, or to him who has the custody of it. But the case is to the contrary. The justice certified *a copy* of the conviction, and gave as a reason for doing so, that

he had, previously to the coming of the writ, sent the record itself, as it was his duty to do, to the sessions. The court refused to quash the return, (which was moved for by the plaintiff in certiorari himself) on the ground that the writ had improperly issued. Cases were cited in our own court, to show that writs of certiorari have been directed to persons not having the legal custody of the document required—such, for instance, as surveyors of the highways, in road cases; and justices of the peace in the case of military warrants. But this only proves, that the same irregularity, and want of legal accuracy, has prevailed in the direction of the writ, as has been shown to exist in relation to the parties; but it does not prove that the writ may lawfully be directed to any body.

Upon the supposition that the appraisers had terminated their duties, and filed their assessments in the proper offices, before the writ was issued, (and if they had not done so, the writ was premature) the writ, in my opinion, was fatally misdirected. The appraisers had become *functi officio.* Their proceedings, by the very terms of the charter, had become matter of "*public record*": they had ceased to have any control over them, and *could not* obey the command of our writ. They could neither send us the *record* itself, nor *officially* certify to us even a copy of it. They could, indeed, as, in fact, they have done, go to the proper offices, and get copies duly certified by the respective clerks, and annex them to our writ; and the crier of the court might have done the same thing if we had directed our writ to him; but neither of them could *officially* respond to the writ. This is not a technical objection, as was said, but a grave and substantial one; for if a certiorari is improperly directed, nothing can be removed by it; 1 *Bac. Arb. tit. cert.* 572, *let.* I.

The III. objection is that the return is insufficient—it appearing, upon the face of it, that the papers sent up are only copies.

If this objection is fatal, it only shows that the writ was misdirected. The appraisers had not the custody of the original documents, and could not, therefore, either in fact, or in legal contemplation, send them up. It is true, with some qualification, as was insisted at the bar, and said by the chief justice (Kirkpatrick) in *The State* v. *Nichols,* 2 *South.* 542, that the record is never sent with the writ, but only the tenor. But when

Morris Canal ads. The State.

*copies* are sent by the proper officer, having the legal custody of the record, they are received and taken *for* the record; they are not received *as* copies, *unless* the tenor only is required by the writ; 1 *Bac. abr. tit. Cert.* 572, *let.* H. and *per Holt. Ch. Just. in Rex* v. *North*, 2 *Salk.* 565, *pl.* 2. " It is an error in the clerks in London, that upon a certiorari, they return only a transcript, as if the record remained below; for in C. B. though they do not return the *very individual* record, yet the transcript is returned, as if it were the record; *and so it is in judgment of law.*" 4 *Vin. abr. tit. Cert.* 340, 341.

But this writ calls for the *records;* and if copies are sent, we cannot act upon them *as such;* we must *intend* them to *be*, and receive them *as* the records, or not receive them at all; for on this certiorari, we are to hold plea of the record. But we can make no such legal intendment in this case, for they are sent here merely *as* copies, and that too, by persons who could not send the originals. This is not *apices litigandi*, a mere legal refinement; it is a doctrine founded on this plain distinction, that when the object of the certiorari is not to affect the record itself, or where the court awarding the writ, cannot hold plea of the record, there the tenor only is to be certified. But where the certiorari is in the nature of a writ of error, as it is in this case, and the court is to hold plea of the record, the record itself is to be sent up; to the end, that the judgment of the court may conclude the record; 4 *Vin. abr. tit. Cert.* 340 *let. C;* 1 *Bac abr. tit. Cert.* 572, *let.* H. In my opinion therefore, the return to this certiorari " is naught," and ought to be quashed or taken off the files. And see *Palmer & al* v. *Forsyth & al*, 4 *Barn & Cress.* 401; and in 10 *Eng. C. L. R.* 368.

If the controversy was to terminate with this motion, it would be unnecessary to pursue the subject any further; but as such is not likely to be the case, I shall proceed to consider the fourth exception: viz—That the writ and return is multifarious —First, because the prosecutors have no common or joint interests, but only several, independent, and distinct rights; and secondly, because the certiorari calls for five several and distinct records, though the prosecutors are neither parties or privies to all, or to any two or more of them.

It was asked by the counsel for the defendants, how this cause is to be conducted? Are the prosecutors to join in one common assignment of errors, or is each one to assign for himself the error he complains of, as affecting his own rights? If it becomes necessary for the prosecutors to enter rules, or take depositions, to prove matters not common to them all, but applicable only to their individual cases, in what manner is it to be done? Are all to be actors for each; or, having got the different records here by a joint process, are they now to sever, and each proceed for himself? These, and other questions, must be met and answered. But it is no answer to say, as was done in argument, that separate certioraris would be so expensive as to amount to a denial of justice; that some of the prosecutors would be unable to bear the expense of an individual suit. If such be the case, it is no denial of justice, in the proper and legal sense of that expression. Nor, must we amalgamate separate and individual claims, because the law abhors a multiplicity of suits. Combinations, for the purposes of litigation, are equally odious. The same argument would justify a joint action in every other case, where the plaintiffs could plead poverty, provided they had sustained similar injuries and were entitled to similar remedies. Nor is it any answer to say, that the prosecutors have one common right, if by that is meant only, that each has, in common with the others, a right to complain; and if, by *one common right* is meant a *joint right* or joint cause of action, it is not true. What has A to do with B's land, or with the damages assessed to him? But, it is said, the appraisers adopted certain erroneous principles, which they applied to the cases of all. Be it so; that cannot give them a joint remedy. A was not injured by the application of that erroneous principle to the cases of B and C. If injured at all, it was by the application of that principle to his own case. Suppose several causes pending in this court, of the same character, between different parties. We mistake the law, and by the application of an erroneous principle to all the cases, we give judgment against the several defendants; will it be pretended that therefore the defendants may have a joint writ of error? Certainly not? Again, it is said, the landholders are all parties to the *record.* This, however, is not so, unless the five dif-

Morris Canal ads. The State.

ferent records remaining in the several counties constitute in fact, but one entire record. But if it were so, it would not alter the case; the landholders would, indeed, be all *parties* to the record, but not " *a party*;" each would be a party in his own right. The rights of the landholders are not joint and several. They must be either the *one* or the *other*. If joint, then all of them, without exception, ought to have united in this writ, unless permitted by a rule of this court, to sever; and if several, then they cannot, upon any principles, unite as plaintiffs or prosecutors.

The cases cited by the plaintiff's counsel, *Rex* v. *Harmer & al, Andr.* 344, & *Rex* v. *Inhabitants, &c.*, 2 *Salk.* 452, only shew, that one certiorari will remove several orders or indictments against the *same* individual; 4 *Vin. abr. tit. Cert.* 337, *let. B.* 2.

Upon the best consideration, I have been able to give this subject, the result in my mind is, that where the injured or complaining party cannot, himself, upon legal principles, be the plaintiff in certiorari; (as he cannot be where the state is either actually, or in legal contemplation, a party to the proceedings;) there the writ must be issued at the suit of the state, upon the application of the individuals seeking protection or relief; who are then the relators or prosecutors, or are defendants in certiorari, according to the nature of the case; that in all such cases, the writ may be issued at the instance of any one or more of any number of persons who may be affected by the record or proceeding below, however several or distinct their respective rights or interests in the matter may be. The court may then reverse or set aside the order, judgment or proceeding complained of, as to any one or more of the prosecutors, or confirm the same as the law of the case may require. Accordingly we find it laid down, that a writ for the removal of all indictments against A, may remove an indictment against him and twenty others, *so far as concerns him;* 1 *Bac. abr. tit. Cert.* 573, *let.* I. Again, if there be but one indictment, and the offences several, as if A, B, C and D, be indicted by one bill, for severally keeping disorderly houses: A and B may have a certiorari, and it will remove the indictment *as to them :* and the record is then in B. R. *virtually* and *truly*, as to A and

B ; *but* as to C and D, the record remains below ; 4 *Vin. abr. tit. Cert.* 337 *let.* B.

*The State* v. *Wilson, assessor, &c.* 1 *Penn. R.* 300, which was a certiorari to remove the assessment of taxes, *The State* v. *Kirby,* 2 *South.* 835, and another case of the same name in 1 *Halst.* 143, by which warrants for military fines against a number of delinquents, were reviewed, are all in perfect accordance with these principles ; for in each of those cases, the *state* was the actor, and necessarily the plaintiff in certiorari. But if the parties seeking relief, can have a certiorari in their own names, as plaintiffs on the record, *they* must prosecute it according to their rights. If more than one person is concerned, and they are jointly bound by the order or judgment below, they must *all* unite and prosecute a joint certiorari, (unless by summons and severance, or rule of court in lieu thereof ;) and then this court must either affirm or reverse the whole matter. On the other hand, if the order or proceeding below, though it constitutes but one entire record, affects them *severally* and not *jointly,* they must then seek their remedies, by separate writs of certiorari. They cannot join in one writ, and then have divers trials and divers judgments in that one suit. The reason for this difference, between those cases in which the state must be plaintiff, and those in which the injured individuals may themselves be plaintiffs in certiorari, is this : viz—If several persons are jointly, or jointly and severally bound by one record, and *all* will not, though *all* might unite as plaintiffs in error, there may be summons and severance. But if it is a matter in which the state is a party, and must therefore be plaintiff on record, there can be no summons and severance among defendants ; and therefore, if the state will not lend its name to such of the defendants as wish to appeal from the order or proceeding below, all would be remediless.

It was argued by the counsel for the plaintiff, that if the state creates a corporation, and gives it a right to enter upon and take the lands of individuals, they have a right to use the name of the state, for their protection against any irregular or unlawful conduct on the part of the corporation. It is true, if a corporation abuses, or misuses its franchise, the state is the proper party to call them to account. But it by no means fol-

Morris Canal ads. The State.

lows, that because the state, by its legislative act, has created the corporation, therefore, in every controversy between *it* and individuals, the state must be a party. It is no answer to say the proceeding complained of took place under the charter. A corporation can do no act but in virtue of its corporate authority ; and that argument, therefore, would involve the state in every transaction between the corporation and individuals. The law cannot be so. An examination of the cases in which the state here, or the crown in England, has been plaintiff in certiorari against corporations, whether municipal or private, will shew that the object of the certiorari was to call in question, either the right of the corporation to do, or the manner of doing some act affecting the public interest.

The council for the plaintiffs by way of preliminary objection, insisted the defendants were out of time ; that they ought to have raised these questions on the rule to shew cause why this writ should not be allowed. I do not think so. The only inquiries, on the argument of that rule, were, whether it was a proper case for a certiorari, and whether probable or sufficient ground was laid for an allocatur. The form of the writ was not discussed or settled on that rule.

Upon the whole, for the reasons I have assigned, I am of opinion, the certiorari in this case, and the return thereto, must be quashed and set aside, with costs.

FORD, J. concurred.

RYERSON, J. The counsel for the defendants moved to quash this writ, first, because the name of the state was improperly used, the state having no interest, or concern, in the questions involved. It is said to be merely a controversy between private persons, in which character the defendants are to be regarded.

But I am not satisfied that this objection ought to prevail. It should be borne in mind that the proceedings to be reviewed, by this writ, constitute one link in a chain by which private property is taken for public use, without the consent of the owner, to constitute and construct a public highway; and I can see no essential difference between this case and the laying out of a common or ordinary highway, or a turnpike road, which are properly reviewed by a writ, in the name of the state. The examples are too numerous, and well known, to require to be par-

ticularly cited. The state, alone, has the prerogative of taking and appropriating private property without the consent of the owner. It is the exercise of a high attribute of sovereignty, and whether taken by the intervention of ordinary and subordinate public officers, as surveyors of the highway, or by more elevated special commissioners, as in the present case, is all the same. It is still the act of the public, by public agents, known and accredited as such, and for that purpose. Nor can it make any difference whether in this business of constructing highways, of which the canal is one, the state acts directly by its proper public officers, or mediately through a private individual, or company of individuals, with a delegated power to exercise this prerogative, and to have the expense reimbursed by exercising another public prerogative of taxation, in the shape of tolls. The public is, or is supposed to be, the party to be benefited by the establishment of the canal. It is only on this basis of public interest, that the grant of such extraordinary powers can be supported, or is even asked for, however they may sometimes be exercised in derogation thereof. I understood it to be conceded, on the argument of this cause, that the position now contended for would be correct if it were the survey of the route of the canal, and not a mere appraisement of the land, or assessment of damages which were sought to be set aside. But the distinction is more imaginary than real. The company is not possessed of the land by the survey. The appraisement, and payment, or tender, of the money, must be superadded to give them the title, or lawful possession. Without this, they are liable to be turned out by the owner, the canal demolished, so far as it passes over his soil, and this great public work, which has occupied so much public time and legislation, under an idea of great public benefit to be received from it, entirely interrupted ; *6th sec. of the act of incorporation*—near its close, *Har. Com.* 96. The public interest is therefore most manifestly involved in this controversy, and the case is expressly within the opinion of Chief Justice Kirkpatrick, in *The State* v. *Kirby*— relied on by the defendant's counsel. Besides, it should be observed that the state has, in this case, granted to this company the power to exercise some of the most important and interesting public prerogatives ; and it is incumbent on the state, as I

conceive, to interpose, as often as necessary, for the protection of its citizens, in order to see that those prerogatives are exercised in a lawful and proper manner. I hardly deem it necessary to notice the case of *Kingsland* v. *Gould & al.* cited on the argument by the defendant's counsel. The slightest inspection will show that the proceedings removed, related only to the improvement of private property. It was further said, on the argument, that the name of the state was calculated to give an improper weight to this proceeding. If there be any thing in this argument not sufficiently answered by the observation just made, it may be further remarked that the citizen is entitled to the protection of the state against an artificial body, raised up under public authority, and clothed with prerogatives and capital, too powerful to be resisted by an ordinary individual.

It was said, secondly, that this writ was erroneous in the name of office given to the persons to whom it was addressed; that the appellation of commissioners was improperly used instead of appraisers. This objection presents a question of no great moment, so long as the writ fully designates the persons, and points out the character, or capacity, in which they are addressed; and if in so doing, an improper term has been used, the due administration of justice requires that we should direct a letter to be substituted, and not defeat the whole proceeding for such a mistake. The error, if any, may be amended. But I believe "*commissioners*" to be correct. It is *nomen generale*, designating an office of a public or private nature, permanent or temporary; and although the term be not used in constituting the office, they may be nevertheless commissioners, if their duties be confined to a particular case, or class of cases. Thus we may have commissioners to make partition of lands, street commissioners, or commissioners of bankruptcy; and in this case we have commissioners to make appraisements, although the term be not used; and the word "appraisers" is used in the act, not as any official, or technical appellation, but rather as descriptive of the *duties* which they were *commissioned* to perform.

A third objection taken to this writ is, that a number of persons, having no common interest, are joined together in its prosecution; and the case of *The State* v. *Kirby*, is relied on by ei-

ther party in support of, and in answer to, this objection. Upon the authority of that case, the writ ought not now to be quashed. It was also apparent, on the argument of this cause, that the defendants carefully sought, and had an opportunity to resist the allowance of this writ. When the motion therefor was actually made before the court, they declined to urge any objection to the right, or form, of the writ. Under these circumstances, I am not inclined to hear them now, on points not of vital importance. According to the view which I have taken of this case, the writ was properly issued in the name of the state. The whole proceeding, or record, unless for another objection not yet noticed, would be thereby removed. The record, and the whole record, being before the court, any number of persons may very properly come in, and assign errors on his particular case. In this I am supported by the case of *The State* v. *Kirby*, before referred to, and I can see nothing in the practice to condemn. It strikes me as a very useless and idle form, to compel every prosecutor (even to a great number) who may lawfully use the name of the state, to have his wrongs redressed, successively to sue forth a writ of certiorari, in order to bring here a record, which, in point of fact, and legal contemplation, is already fully certified to the court. When the record is brought, or is to be brought here, by writ, in the name of the state, this court may very properly, as I believe, exercise a discretion in the number and connection of those whom it will permit to join in procuring it, and proceeding on it, when here, and also in the manner of proceeding, whether jointly or severally. But in any view of the case, I should be unwilling, for this cause, wholly to quash the writ. If the objection were well taken, it would be better to amend by striking off the names of prosecutors, leaving it to be further proceeded on by one alone, or such number as had a joint interest in any one or more of the particular appraisements.

For any and all of the reasons above noticed, I should be unwilling to quash this writ. But it has been further urged, that the writ has been improperly sent to the commissioners, or appraisers, who had not the record, and subordinate thereto, that their return is nugatory. Upon this objection, I feel constrain-

ed to concur in the opinion of the court, to which it is useless for me to attempt to add.

Having come to this conclusion, it is unnecessary to pursue the subject further. I would merely notice one other point adverted to on the argument of this case. That if the state be properly made plaintiff, the prosecutors should be named defendants, *State* v. *Kirby.* I cannot, at present, think this universally true, and would refer to the extensive class of cases of certioraris against turnpike companies. Is there not a distinction where the state acts solely for the common good, by its proper and peculiar agents, or where it acts by its grantees of power coupled with an interest, who have done, or caused to be done, the act complained of, and are therefore rightly called on to defend those acts? I have not attempted to form any definite opinion on the point.

CITED in *Browning* v. *Cooper,* 3 *Harr.* 197; *Morrel* v. *Fearing, Spencer,* 671; *State* v. *Justice,* 4 *Zab.* 414; *State* v. *Howell,* 4 *Zab.* 520 ; *Camden* v. *Mulford,* 2 *Dutch.* 55; *State* v. *Browning,* 4 *Dutch.* 561 ; *State* v. *Brown,* 2 *Vr.* 357.