DEN EX DEM. THEODORE S. TODD v. PHILIP PHILHOWER
AND DANIEL SOWERS.

1. It is not competent to show by parol that part of the land described and conveyed in a sheriff's deed was excepted at the sale, or that it was understood by bidders not to be included in the sale.

2. A sheriff has no estate or interest in lands levied upon and sold by him. He has a naked power to sell given by statute, and the validity of his deed depends upon the directions of the statute being complied with, and it must positively appear, either by recitals in the deed, or proof *aliunde,* that such directions as advertising, &c., have been complied with.

3. Where a sheriff advertises lands as "the farm on which W. T. now lives," without abuttals, and in the description in his deed includes a tract which, although formerly part of the farm of W. T., at the time of the advertisement and sale had been sold by him, and was in possession of his grantee, it is a question of fact for the jury to determine, whether such tract is included in the description in the advertisement, and a charge from the court directing the jury to find in favor of the sheriff's grantee is erroneous.

The errors in this case were assigned upon two bills of exceptions, taken at the trial, to the ruling and charge of Justice Nevius, before whom the cause was tried, at the Somerset circuit, in January term, 1851. The facts of the case, and the ruling and charge of the Circuit Judge, appear in the opinions of Judges ELMER and POTTS.

The cause was argued by Mr. *Ransom* for the plaintiff in error, and Mr. *Whelpley* and Mr. *Dilts* for the defendant in error.

ELMER, J. The property in dispute in this action is a tract of 29 4-100 acres, part of a farm containing 220 20-100 acres of land, situate in the township of Bedminster, in the county of Somerset, which up to the spring of 1842, was owned and occupied by William Todd. At that time William Todd put his son Theodore S. Todd, the lessor of the plaintiff, who lived on an adjoining· farm, in possession of the twenty-nine acres, and by a deed dated August 23, 1842, recorded October 5, 1842, the *bona fides* of which is not disputed, conveyed the same to him in fee. The defendant, Philip Philhower, claims the whole farm, including the twenty-nine acres, by virtue of a conveyance from Richard Ten Eyck and John Runk, dated April 5, 1849. The title of Ten Eyck and Runk was derived from a deed made to them by David T. Talmage, sheriff of the county of Somerset. Upon the trial evidence was offered on the part of the plaintiff, to show that the land in dispute was never advertised by the sheriff, (and some other matters not necessary to be noticed,) which was overruled, and the judge who tried the cause, having instructed the jury that the defendants were entitled to a verdict, exceptions were taken on both points, and the question now is, whether this ruling was correct?

The sheriff's deed given in evidence, bearing date June 26, 1843, recites at length four executions; one of them issued upon a judgment against Wm. Todd and others, signed Nov. 9, 1841, and the others against Wm. Todd alone, signed subsequent to the making and recording of his deed to the lessor of the plaintiff. It also recites, that by virtue of said writs, the sheriff, for the want of sufficient goods and chattels, did levy on all that tract of land and premises, situate in the township of Bedminster, &c., now occupied by William Todd, one of the defendants, and on the road leading from Potter's mills to Peapack, and bounded by lands of the widow Willet, James Van Pelt, Abraham Cortelyou and others, said to contain about two hundred acres of land, more or less, and that the time and place of the sale of the said land was advertised, as is particularly stated, in conformity to the law, and that Ten Eyck and Runk being the highest bidders, the same was struck off and sold to them. The deed then states, that for the consideration of the sum bid, the said sheriff had granted, bargained and sold unto the said purchasers, all the above named land and premises, with the appurtenances, more particularly described as follows. Then follows a description of the farm by metes and bounds, including therein the twenty-nine acres in dispute.

Taking the recital of the deed as the evidence of what was advertised, it would seem that if William Todd did not occupy the twenty-nine acres at the time it bears date, then that tract was not advertised. If we examine the advertisement inserted in the newspaper, dated April 17, 1843, a copy of which was given in evidence on the part of the plaintiff, it appears that the land to be sold is therein described as "all that tract of land and premises on which said William Todd now lives, situate in the township of Bedminster, Somerset county, on the road leading from Peapack to Potter's mills, and containing two hundred acres, more or less." Whether this description included that tract depended upon the fact whether it was then in the possession of Theodore S. Todd, or of his father William Todd. If the object of advertising land to be sold at public auction, is to

apprise those interested of what is intended to be sold, as I think cannot be denied, and as was held by the Chancellor, in the case of *Merwin* v. *Smith*, 1 *Green Ch. R.* 182, there is nothing in the advertisement as recited in the deed, or as in fact inserted in the newspaper, to indicate that land not at its date occupied or owned by William Todd was meant to be offered. There is no general description to identify the original farm, as once owned and occupied by him, and nothing indeed to indicate what land situate on the road mentioned was meant, except that it was land and premises on which said William Todd then lived.

It was attempted on the argument to help out the recital in the deed and the advertisement itself, by referring to the endorsement, on the first execution of the levy made December 20th, 1841, when William Todd undoubtedly occupied the whole farm, and which describes it as the farm on which defendant now lives. But this description of the property actually levied on, and the description of that advertised for sale, are distinct things, which may or may not coincide. A correct description in the levy usually returned, cannot aid a defective advertisement, because not being published, the public are not informed what it is.

The plaintiff offered to prove that the land in controversy never was advertised, that no land was offered for sale by the sheriff, except that in the possession of the said William Todd; that the land in controversy was not in the possession of said William Todd, and had not been for more than a year preceding the sale. This testimony was overruled, so that the question is distinctly presented, whether it is necessary to pass a title by virtue of a sheriff's deed, that it should appear by the recitals of the deed itself, or by proof, that the sale of the premises was previously advertised as the law directs. On behalf of the defendant it has been ably argued that the statute in this respect is only directory to the sheriff, and that if he neglects his duty, he is responsible to the injured parties, but such neglect ought not to prejudice an innocent purchaser, who has no means of ascertaining whether he has fulfilled his duty, and cannot invali-

date the deed in a court of law. This view has been taken and forcibly sustained by the courts of some of the states, whose statutes also differ somewhat from ours. *Turner* v. *McCree*, 1 *Nott & McCord* 12; *Haywood R.* 24; *Lawrence* v. *Speed*, 2 *Bibb* 401; *Minor* v. *City of Natchez*, 9 *Sm. & Mar.* 602.

A different doctrine has been too long established and acted upon in this state, to render it proper to depart from it, until the legislature shall think proper to change the law. In the state of New York it has been provided by a statute, that the sheriff shall be liable to heavy penalties for selling otherwise than in the manner prescribed by law, but that no such offence shall be deemed to affect the validity of the sale, without which enactment it would be held void. 1 *Cow.* 629; *Jackson* v. *Roberts*, 11 *Wend.* 425. I think it cannot be doubted that in New Jersey it has been the established principle, ever since the act of 1799, making lands liable to be sold for the payment of debts, that the right of the sheriff to sell and convey lands, is a mere naked power, so that to render a title under his deed available, every requisite of the law must be shown to have been complied with, unless by lapse of time it might be presumed. The judgment and execution have been required to be shown; and prior to the act of 1831, (*Harr. Com.* 368; *Rev. Stat.* 662, § 8,) it was held that the judgment and execution produced must strictly correspond with those recited in the deed. *Den* v. *Wright*, 1 *Peters' C. R.* 64; *Den* v. *Zellers*, 2 *Hal.* 153; *Den* v. *Despreaux*, 7 *Hal.* 182; *Den* v. *Farlee*, 7 *Hal.* 326; *Den* v. *Downam & Camblos*, 1 *Green* 136; *Den* v. *Mulford*, 1 *Zab.* 500. In the case of *Thibault & Humphries* v. *Den on the demise of Sharp*, (*Hal. Dig.* 365,) decided in the court of errors, at February term, 1838, it was held, that where the sheriff's deed does not show on its face that the property was advertised according to law, it is necessary that the same should be proved.

It can make no difference that the defendants in this case are purchasers, for a valuable consideration, from those who purchased at the sheriff's sale. If the sheriff's deed did

not convey a good title to the purchasers at his sale, they could convey none to others. There is no statute protecting the interest of *bona fide* purchasers, as is done by the statute of frauds, in the case of deeds made void, against creditors, for fraud. Several of the cases before cited, were cases where the land had gone into the hands of innocent purchasers, who failed in supporting their title, because of defects with which they had no concern. I am therefore of opinion that the judge erred in overruling the evidence which was offered to show that the land in dispute was not properly advertised, and in charging the jury that the defendants were entitled to a verdict, and that the judgment should be reversed.

POTTS, J. On the *ninth of November*, 1841, William Todd was seized and possessed of a farm in Bedminster, Somerset county, containing 220 20-100 acres of land.

On that day Stephen Brown obtained a judgment against William Todd and others for one thousand three hundred and sixty-eight dollars and sixty-five cents, upon which execution was issued to the sheriff of Somerset, who on the twentieth of December, 1841, levied on the said farm, describing it in the levy 'as " one farm on which defendant (William Todd) *now lives*, lying in the township of Bedminster, Somerset county, on the road leading from Potter's Mills to Peapack; said farm *is said* to contain one hundred and seventy acres, more or less, taken in execution as the property of said William Todd, one of the defendants."

Three other executions were levied, *subsequently*, upon the same property, by the sheriff, issued upon judgments recovered in 1843—one in favor of Arrowsmith, one in favor of Potter, and one in favor of Blackwell, against the same defendant.

On the *twenty-third of August*, 1842, William Todd and wife conveyed to Theodore S. Todd, the son of William, and the lessor of the plaintiff, a part of the above mentioned farm, containing 29 4-100 acres, by deed which was duly recorded. This lot thus conveyed was subject, of course, to the

lien of the *Brown* judgment—but not to that of the other three judgments, which were recovered subsequently to this deed.

On the *seventeenth of April*, 1843, the sheriff advertised that, "By virtue of the above stated writs of *fieri facias*, (stating the four executions in the caption,) to me directed, I have levied on all that tract of land and premises on which the said William Todd *now lives*, situate in the township of Bedminster, Somerset county, on the road leading from Potter's Mills, and containing two hundred acres, more or less, which property I shall expose to sale at public vendue at the house of David Sanderson, in the township of Bridgewater, Somerset county, on the nineteenth day of June next, at two o'clock in the afternoon, between the hours of twelve and five."

This sale was made pursuant to *this advertisement*. Runk and Ten Eyck became the purchasers at two thousand three hundred dollars, and the sheriff by deed in the usual form, conveyed to them the whole of the William Todd farm of 220 20-100 acres, including, of course, the lot of 29 4-100 acres sold to Theodore in 1842.

The deed is dated June twenty-six, 1843, recites the executions and levy, the advertisement, and the sale, and describes the premises so as clearly to embrace the whole farm, by reference to the conveyances under which William Todd held. It was duly acknowledged and recorded as early, at least, as the spring of 1844. Runk and Ten Eyck, the purchasers, went into possession under the deed of the whole farm, and as far as appears held peaceable possession of it until the fifth of April, 1849, about five years, and on that day conveyed it to Philip Philhower, the defendant, for the sum of six thousand three hundred dollars.

Philhower continued from that time in the undisturbed possession of the premises up to the term of January, 1851, when Theodore S. Todd commenced this action of ejectment in the Supreme Court, to recover from him the 29 4-100 acres, embraced in his deed of August, 1842.

The cause was tried at the Somerset circuit in December,

1851. In addition to the above facts, evidence was admitted to show that Theodore lived on a small farm adjoining his father's—that he had possession of the 29 4-100 acre lot, or was farming it, *in the spring of* 1842, *and continued in possession till the spring of* 1844. The sheriff testified that he meant to levy on all the land—and it appeared that the 29 4-100 acre lot was always considered as being part of the William Todd homestead farm.

The plaintiff then offered to prove :

I. That the land in controversy in this suit (the 29 4-100 acre lot) *was never advertised* by the sheriff, and that he would prove it by the advertisement itself.

II. That at the time of the sale of the real estate of the said William Todd, no land was offered for sale by the sheriff except that in the possession of the said William Todd at the time of the said sale ; that *bidders present at the said sale* did not understand that the land offered included the land in controversy in the suit ; and that at the time of the said sale the land in controversy in this suit was not in possession of the said William Todd, and had not been in his possession for more than a year preceding the time of the said sale.

III. That the sale made by the sheriff was made by virtue of *an agreement* between said William Todd and Ten Eyck and Runk, by which R. & T. agreed to purchase the property of the said Todd and pay off his debts ; and that this agreement was made after said Todd had conveyed the 29 4-100 acre lot to Theodore, and after Theodore had possession of it.

IV. That after the sale by the sheriff, and before the execution of the deed by him to Runk and Ten Eyck, they had a survey of the farm made, and when the surveyor came to the line along which the premises in controversy lies, William Todd, who was along, objected to having *this lot* included in the survey, as it was not included in the sheriff's sale, he having previously sold it to Theodore ; that R. & T. then *admitted* that it was not included in their purchase,

but said they wished to run round it merely for the purpose of seeing where the old lines were.

V. That the survey copied in the said deed from sheriff Talmage to R. & T. was furnished the sheriff by them, and put in the deed at their request.

The judge ruled that this evidence was inadmissible, except as to the sheriff's advertisement, which was received, and both parties having rested, he charged the jury that their verdict must be for the defendant, which ruling and charge are the matters assigned here as error.

The ruling was clearly right. As to what bidders at the sale may have understood—what verbal agreements may have been had; and how the boundaries of the property were ascertained; what was said and done at the survey, and who furnished the description of the land to the sheriff to draw his deed by—matters resting entirely in parol—depending on the frail and uncertain memory of witnesses ; a species of evidence, which is by express statutory provision, made inadmissible in any contract respecting lands, or in any contract for the sale of goods of the value of thirty dollars, even if offered the day after such contract is made ; surely it would be preposterous to hold that such evidence should be admitted in an action of ejectment to break down a title to an estate, five, fifteen or twenty years after the circumstances are alleged to have occurred ; and that, too, when the title has passed into the hands of the third parties.

In the case of *Den* v. *Young*, 7 *Hal.* 300, which was an action of ejectment, the defendant offered to prove by parol certain irregularities of the sheriff at the sale, but it was held that he could not do so. Justice DRAKE, in that case said, it is true, that a substantial departure from the directions of the legislature will vitiate a sheriff's sale, because his power to sell is subject to the conditions imposed by the same authority which created the power ; and hence it is necessary that every prerequisite to the exercise of the power should appear. *Den* v. *Wright*, 1 *Peters' C. C. Rep.* 64; *Den* v. *Zellers*, 2 *Hal.* 153 ; *Mushback* v. *Ryerson*, 6 *Hal.*

346; *Den* v. *Despreaux*, 7 *Hal.* 182; *Den* v. *Dowman*, 1 *Green* 135; *Thibault's case, Hal. Dig.* 365; *Den* v. *Mulford*, 1 *Zab.* 500. But outside of this rule, I find no case in this state which holds that a deed, whether made by a private individual or a judicial officer, can be impeached in this loose way. The case was not put upon the ground of fraud, below, and I do not think it necessary to consider here how far a *latent* fraud, resting merely in parol, can be set up, in an action of ejectment, after so many years, against a title in the hands of an innocent, *bona fide* purchaser, without notice.

The general doctrine that a deed cannot be contradicted by parol, has been held in numerous cases out of this state. It has been held expressly, that such evidence is not admissible to show that a certain part of the land included in a deed by administrators, was excepted out of the estate at the time of the sale, *Snyder* v. *Snyder*, 6 *Binney* 489; nor to vary the contents of a written instrument; even in the case of a clear mistake or departure from written instructions, where it would affect the interest of third persons uninformed of the facts, and who have *bona fide* and for a valuable consideration acquired rights under it, *Heilner* v. *Imbrie*, 6 *Serg. & R.* 401; nor to show, in ejectment against a sheriff's vendee, that a certain tract was not included in the sale, in contradiction to the levy, *Beeson* v. *Hutchinson* 4 *Watts* 442.

In *Jackson* v. *Croy*, 12 *Johnson R.* 428, the Supreme Court of New York set aside the verdict below, because parol evidence was received on the trial, not to explain any ambiguity in the sheriff's deed, but in direct contradiction of it; and the court said that "resorting to this sort of extrinsic testimony to show that the premises ought not to have been included, is contrary to the established rules of evidence in relation to instruments of this description." And the same was held in *Jackson* v. *Vanderheyden*, 17 *John. R.* 167; and in *Jackson* v. *Roberts' ex.*, 11 *Wendell* 424.

In *Minor* v. *Natchez*, 4 *Smedes and Marshall* 602, which is a well considered case, the court of errors in Mississippi

went so far as to hold, not only that no irregularity of a sheriff in conducting a sale would avoid his deed at law, but that a failure of the sheriff to advertise according to law would not vitiate the bill of the purchaser of the sale; and the learned judge who delivered the opinion cites several authorities in support of these positions. We have not, however, in this state, carried the doctrine to the extent of holding that, if the sheriff fail to comply with the positive directions of the statute in any essential particular, his deed will still be valid, as will be seen by reference to the cases already referred to.

The application of the established rules of law could not have been matter of just complaint to the plaintiff in this case. He appears to have been in possession of the twenty-nine acre lot at the time of the sale. He lived adjacent to the property. After Runk and Ten Eyck purchased, about the spring of 1844, they seem to have gone into peaceable possession. They remained in possession until April, 1849, some five years. They then sold to Philhower and put him in possession, and two years more pass, before this suit is brought; and there is no pretence that Philhower had any notice that Theodore claimed any part of the premises.— He is, as far as appears, a *bona fide* purchaser without notice, and entitled, as such, to the most favorable considerations.

II. But another objection to the validity of this deed is raised. It is insisted that it is void as to the twenty-nine acres, because the sheriff advertised and sold not only under the Brown judgment and execution, but also under the other judgments and executions which were subsequent to the deed to Theodore. But this objection cannot prevail. The authority to sell the whole farm under the Brown execution was complete. This proceeding on the part of the sheriff was doubtless very irregular and decidedly to be condemned. It would have been good cause to set aside the sale if application had been immediately made to the Supreme Court— and even after the deed was delivered, the plaintiff below might have had relief in equity. But it was an irregularity

which could not be corrected in this way. The deed as to the twenty-nine acres was not void.

III. Then the only remaining question is—Did the judge err in instructing the jvry that under the evidence in the cause the defendant was entitled to a verdict?

It was in evidence that William Todd, the defendant in execution, had conveyed the twenty-nine acre lot to Theodore, on the twenty-third August, 1842, and that Theodore had possession of it from the spring of 1842 until the spring of 1844.

The sheriff, on the seventeenth of April, 1843, advertised that under the Brown execution and other executions in his hands, he had levied on " all that tract of land and premises on which said Wm. Todd *now lives,* situate, &c., and containing two hundred acres more or less," and that he would expose the same to sale at public vendue, on the nineteenth of June following. The sale was made in pursuance of *this advertisement.* Did the advertisement include the twenty-nine acres? This became an important question. For, if the sheriff did not advertise the twenty-nine acres according to law, he failed to comply with a prerequisite which was essential to the exercise of the power to sell. The power of the sheriff was a naked statutory power, not coupled with an interest, and in all such cases every prerequisite to the exercise of that power must precede its exercise; *Williams* v. *Peyton,* 4 *Wheaton* 77. When the sheriff's deed recites the performance of these prerequisites, that is *prima facie* evidence that they were performed, and puts the party contesting the deed to show that in fact they were not performed. Here the recital is at least ambiguous. The plaintiff had produced some evidence to show that the twenty-nine acres were not included within the terms of the advertisement. He showed that at the date of the advertisement and of the sale, he was in possession of this lot, and if this was so, William Todd could not have been in possession, and then the twenty-nine acres were not parcel of the farm advertised. This was a question of fact. The judge virtually took this question of fact from the jury by the broad and positive terms of the charge that the verdict must be for

the defendant.    In this cause the judgment must be set aside, to the end that a new trial may be awarded.

Judgment reversed.

*For Reversal*—THE CHANCELLOR, THE CHIEF JUSTICE, Judges ARROWSMITH, ELMER, HAINES, OGDEN, RISLEY, CORNELISON, HUYLER, VALENTINE, and WILLS.

*For Affirmance*—None.

CITED in *Jackson* v. *Todd*, 1 *Dutch.* 121; *Wortman* v. *Skinner*, 1 *Beas.* 387.