FANNY D. WALTON, AS EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF ISAAC V. S. HILLIER, PLAINTIFF-RESPONDENT, v. RICHARD HILLIER, DEFENDANT (JAMES H. McLEOD, APPELLANT).

Argued October 23, 1941—Decided January 29, 1942.

For the appellant, *Louis Auerbacher, Jr.*

· For the respondent, *Winard & Winard (Herman Winard, of counsel).*

The opinion of the court was delivered by

THOMPSON, J. This is an appeal from an order of the Essex County Circuit Court, determining that the writ of execution issued by one Walton is prior to the writ of execution issued by one McLeod, both writs of execution having been delivered on the same day to the sheriff of Essex County in separate actions by different plaintiffs against the same judgment debtor. The order was entered after hearing on rules to show cause and testimony taken thereon.

It appears from the record that the appellant and respondent herein both secured judgments against Richard Hillier in the Essex County Circuit Court, the appellant's judgment having been first in order of time. Writs of execution were issued out of the Essex County Circuit Court on both judgments on February 27th, 1941. Both writs were duly recorded in the Essex County clerk's office and from there sent to and received at the office of the sheriff of Essex County on the same day, February 27th, 1941. For convenience the appellant's writ will be herein denoted as the McLeod execution, and the respondent's writ as the Walton execution. The practice in the sheriff's office in connection with the receipts of writs of execution there delivered was to endorse on each writ by a mechanical date and time stamp the date and time of day the writ is received in the office. It was testified in this case by Oliver Werkheiser, executive clerk of the sheriff's office and in charge of writs of execution directed to the sheriff, that the stamp endorsements on both writs indicate that both show the stamp imprint of Febraury 27th, 3:45 P. M., 1941, but that in the Walton execution the figure 5 is not even with the figures 3 and 4 but "a little higher up;" and that in the McLeod execution "the figure 5 of the 3:45 is even with the 3 and the 4;" and that, the machine being

operated by clock mechanism, and the numbers go down in front and up in back, "the execution in which the 5 is higher than the other two numerals is the one that was marked first," and that was the Walton execution. In other words, the two documents were passed through the time-date machine, one following the other, with a slight intervening of time, almost imperceptible, yet with sufficient variation in the relative location of the figure 5 with respect to the other figures to indicate which one preceded the other in point of time, however slight and though perhaps merely a matter of seconds. We think the proof is conclusive as to the order of stamping. The question then is, to what extent such order is determinative of the issue in this case.

The matter of priority of writs of execution is controlled by the statute, *R. S.* 1937, 2:26-90, 91, 92, 93, which read as follows:

"2:26-90. *Time when execution effective.* No writ of execution shall bind the property or the goods of the person against whom such writ is sued forth, but from the time that such writ shall be delivered to the sheriff, undersheriff, coroner or other officer, his deputy or agent, to be executed."

"2:26-91. *Indorsement on writs of year and day of receipt thereof by officer.* In order to show the time when writs of execution against the goods only or against the goods and chattels and the real estate of the person against whom such writs are sued forth are delivered to the sheriff, undersheriff, coroner or other officer, his deputy or agent, to be executed, such officer, his deputy or agent, shall, upon the receipt of any such writ, indorse thereon, without fee for so doing, the day of the month and year when he received the same."

"2:26-92. *Priorities between executions against goods and chattels of same person issued on same day.* If two or more writs of execution shall be delivered against the goods and chattels of the same person on the same day, the one first delivered shall be first executed and satisfied."

"2.26-93. *Priorities among executions against real estate of same person.* Where several writs of execution shall be issued against the goods and chattels and real estate of the same person, and sufficient cannot be found to satisfy all the

sums commanded to be made, the like priority and preference shall be given in such cases as is given by section 2:26-92 of this title in writs of execution against the goods only, and all disputes respecting the same shall be adjudged and determined accordingly."

Reading the foregoing paragraphs together it is apparent that where two or more writs of execution are delivered against the goods and chattels and real estate of the same person and on the same day *"the one first delivered shall be first executed and satisfied."* Thus the question posed under the circumstances of the instant case is as to whether the variation in the stamping of the respective writs is indicative of the time of delivery of each. Certainly the Walter execution, as we have concluded the testimony as to stamping shows, was first placed in the machine and received its imprint. It is to be remembered that in this case neither of the judgment creditors or their respective legal representatives personally delivered the writ to the sheriff. Both writs had been issued out of the county clerk's office and, according to the testimony, were delivered to the sheriff in a batch or bundle of a number of executions brought from the county clerk's office without any identifiable order of precedence. The scheme of the statute seems to be that the endorsement of time of receipt of a writ should be the evidence of such receipt. It is undoubtedly true that if a numerous batch of writs were brought to the sheriff and he should, with a wrongful purpose, deliberately maneuver to select a given writ for a favorable order of preference, discriminating thereby against other writs, his act might be questioned; but where there is no evidence of such wrongful attempt or intent, the priority comes about through the taking of the writ and proceeding under the statute to indorse it. Manifestly he cannot manually receive and indorse all of a number of writs in the same instant, and we believe that though numerous writs be brought into the sheriff together at one time and in bulk deposited in any spot or with any person therein the receipt contemplated by the statute is not complete until he takes the writ in hand and proceeds to his duty of indorsing such receipt thereon. Nothing appearing to the contrary, it is presumed that he

performed his duty in compliance with the law. There must be a practicable procedure available to carry out the terms of the statute and prevent a hiatus or an impasse in the operation of the legal machinery provided to administer the law and the law's intent. We think that, confronted with a deposit of a bundle or package of numerous writs which the law requires the sheriff to receive and stamp for priority purposes, he has no other conceivable alternative in the performance of his duty than to accept such writs by taking them impartially one at a time and indorsing them, and it is such act in order of time that determines the official receipt, delivery and priority. No other procedure is physically possible under the circumstances. The procedure followed was in conformity with the orderly process of the sequence of duties imposed upon the sheriff in handling a writ of execution.

Notwithstanding the priority of the Walton execution as above set forth, a levy was made on the defendant's property under the McLeod execution previous to a levy on the same property under the Walton execution, but this availed McLeod nothing of advantage, for the levy relates back to the time of the delivery of the writ to the sheriff. *McAdams* v. *Mundy,* 79 *N. J. L.* 480, and *Fredd* v. *Darnell,* 107 *N. J. Eq.* 249.

Appellant argues that the court had no jurisdiction to make the order appealed from, on the ground that the appellant was not a party to the cause in which the order was made. Our courts have frequently upheld the power of a court to adjust priorities in a summary way among contending executions and to control the proceedings, judgments and processes with reference to causes in its forum. *Brown* v. *Dunn,* 50 *N. J. L.* 111; *Matthews* v. *Warne,* 11 *Id.* 295; *Miller* v. *Barber,* 73 *Id.* 38. In the last cited case it was held that courts have a summary jurisdiction of an equitable nature, exercised through stay of execution and the like, for the purpose of preventing their judgments and processes from being made the means of working injustice. The appellant herein was properly before the court under the rules to show cause and was represented by counsel at the hearing.

The order appealed from will be affirmed.

124

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, HEHER, COLIE, DEAR, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 12.

*For reversal*—DONGES, PERSKIE, WELLS, JJ. 3.