976 A.2d 388 (2009)
409 N.J. Super. 124
Frank BORROMEO, Plaintiff-Respondent,
v.
Dominic DiFLORIO, Defendant.
Carol Migliaccio, Appellant.
No. A-3979-07T2
Superior Court of New Jersey, Appellate Division.
Argued June 3, 2009.
Decided August 6, 2009.
*391 Jeffrey A. Grabowski, argued the cause for appellant.
Rudolph A. Palombi, Jr., argued the cause for respondent.
Before Judges AXELRAD, PARRILLO and LIHOTZ.
The opinion of the court was delivered by
LIHOTZ, J.A.D.
Carol Migliaccio appeals from an April 10, 2008 Chancery Division order denying her motion to vacate a writ of execution levied against her real property and allowing the property's sale to satisfy a judgment in favor of plaintiff Frank Borromeo. Plaintiff's judgment was entered in 1990 against Dominic DiFlorio. In this appeal, we examine whether plaintiff's delivery of a corrected writ of execution cured a prior defective writ and review whether DiFlorio's bankruptcy affected the enforceability of plaintiff's judgment lien. Following our review of the arguments on appeal, the record and the applicable law, we affirm in part, reverse in part, and remand for additional proceedings.

I.
The controversy arises out of the following complex, but undisputed facts. The subject property is composed of twenty-eight acres used for commercial farming, designated as Block 9, Lots 45 and 45Q on the Tax Map of Franklin Township, Somerset County, commonly known as 90 Old Georgetown Road (the Property).[1] On December 31, 1988, Evan H. Snyder and Joanne E. Snyder (the Snyders) executed a deed as grantors, transferring the Property to Vincenzo and Patricia Trani (the Tranis) as grantees.
On that same date, a shared-equity agreement (Agreement) was executed between the Tranis and DiFlorio. The Agreement, at paragraph one, acknowledged "legal title to the Property shall be held in the name of [the] Trani[s]." However, in paragraph two, "the parties argee[d] that their respective equitable interests" would be equal. The Tranis had contributed half of the realty's purchase price and, therefore, held a fifty-percent interest. An equal contribution to the purchase price and the costs of securing the mortgage was provided by DiFlorio, who held the remaining fifty-percent interest. The Agreement further contained executory provisions requiring each owner to share equally the ongoing expenses of the Property, including the mortgage, real estate taxes, utilities, and insurance, and allowed each to claim an equal share of any income tax benefits. Either party, upon providing sixty days notice, could withdraw from the Agreement, allowing the other to purchase the withdrawing party's interest.
On January 5, 1989, the deed from the Snyders to the Tranis was recorded in Deed Book 1717 at Page 809 in the Somerset County Clerk's Office. On May 26, 1989, the Agreement between the Tranis and DiFlorio was recorded in Deed Book 1735 at Page 136 of the Somerset County Clerk's office.
Plaintiff and DiFlorio were friends and business partners. For reasons not disclosed, their relationship deteriorated and on April 26, 1990, plaintiff recorded a $100,000 judgment (J-044814-1990) against DiFlorio and two other defendants, as a result of a business dispute.
*392 Migliaccio and DiFlorio began their relationship in 1991. The two were engaged in similar businesses. They began residing together and have three children.[2]
On October 2, 1995, the Tranis executed a "Memorandum of Agreement" (Memorandum) granting a beneficial ownership interest in the Property to Migliaccio. The terms of the understanding provided for an installment sale, whereby Migliaccio assumed full responsibility to pay the mortgage and real estate taxes on the Property for ten years. After this period, Migliaccio would pay additional consideration of $256,000 for full ownership of the realty. The Memorandum was recorded in Deed Book 2031 at Page 723 of the Somerset County Clerk's office on October 24, 1995.
On October 5, 1995, the Tranis and DiFlorio executed a second document declaring the Agreement "null and void" and providing that each party released all claims held by one against the other (Termination Agreement). Documents in the record suggest the Termination Agreement resulted because, shortly after the execution of the Agreement, DiFlorio failed to comply with his obligations for payment of the Property's expenses.
Migliaccio asserts that over the ensuing years, the Tranis were required to shoulder all of the mortgage, real estate tax and insurance expenses. Thus, the Termination Agreement intended to sever the parties' relationship and eliminate DiFlorio's equitable interest in the Property in satisfaction of the obligations due to the Tranis. Simultaneously, the Memorandum secured Migliaccio's equitable interest in the Property for the consideration expressed.
The Termination Agreement was not recorded until July 10, 2004, in Deed Book 5173 at Page 814 of the Somerset County Clerk's office. Thereafter, on September 22, 2005, a deed transferring the Property from the Tranis to Migliaccio was recorded in Deed Book 5803 at Page 135 of the Somerset County Clerk's office. Since that date, legal title to the realty has remained in Migliaccio's name.
Seventeen years after entry of the judgment, plaintiff secured a writ of execution seeking satisfaction of his debt against DiFlorio. The writ plaintiff secured was filed on April 24, 2006 and commanded the Mercer County Sheriff to
satisfy [] said judgment out of personal property of the judgment debtor[] within your [c]ounty, and if sufficient personal property can not be found, then out of the real property in your county belonging to the judgment debtor[] at the time when the judgment was entered or docketed in the office of the C[lerk] of this Court[.]
After filing, plaintiff delivered the sealed writ to the Somerset County Sheriff with a formal request to levy on the Property. On May 11, 2006, the Somerset County Sheriff posted the writ on the door of Migliaccio's residence at Block 9 Lot 45, and scheduled the execution sale for July 25, 2006.[3] Migliaccio adjourned the sale and moved to vacate the levy, contending DiFlorio did not own the Property, and, further, that plaintiff had not made a "good faith attempt" to locate DiFlorio's personal property prior to levying on the realty. Without benefit of a evidentiary *393 hearing, the court denied Migliaccio's motion by order dated August 16, 2006. "The [c]ourt found that there appeared to be collusion between Migliaccio and DiFlorio, specifically that the transfer of the Property from [DiFlorio] to the Tranis, and then to Migliaccio appeared to be a scheme to hide DiFlorio's assets from his creditors."
Sheriff's sale was rescheduled for September 5, 2006. Prior to that date, plaintiff was contacted by the Somerset County Sheriff regarding the error in the writ. On September 1, 2006, plaintiff sent, by facsimile, a "corrected writ" redirecting the command to execute and sell the Property to the Somerset County Sheriff rather than the Mercer County Sheriff. The corrected writ was delivered to the Somerset County Sheriff on September 5, 2006.[4]
Migliaccio moved for reconsideration of the August 16, 2006 order, arguing the Somerset County Sheriff's execution using the first writ was defective and void. Migliaccio asserted, since the writ was directed to the Mercer County Sheriff, the Somerset County Sheriff had no authority to enter upon, post notice or list for sale the realty owned by Migliaccio. Finally, Migliaccio informed the court DiFlorio had filed for bankruptcy relief on September 2, 2006, in which he scheduled plaintiff's debt as an unsecured claim. The court postponed the sheriff's sale until October 10. Thereafter, the sale was adjourned several times and finally adjourned without date pending final disposition of the matter.
Counsel for the Chapter 7 Trustee, appointed by the Bankruptcy Court to administer DiFlorio's estate, concluded the creditors had no interest in the Property. DiFlorio had not scheduled the Property as an asset and, as demonstrated by the facts, the nature of his interest in the Property, and consequently, the interest available to creditors, was unclear. Although discussed in correspondence between the attorneys, the record does not reflect whether an order to vacate the automatic stay was obtained. On April 20, 2007, the Bankruptcy Court issued an order of discharge in DiFlorio's case, pursuant to 11 U.S.C.A. § 727(a). The Chancery Division resumed administration of the matter.
After conducting argument on Migliaccio's application to vacate the writ, the Chancery judge rendered a written opinion on April 10, 2008. The court agreed the original writ was defective, however, it concluded the corrected writ cured the defect. Also, the court determined Migliaccio had notice of the scheduled sale date based upon the original posting, thus, no further posting was required prior to sale.[5] Finally, the judge concluded plaintiff's lien was perfected on September 1, 2006, and secured plaintiff's debt on the Property prior to DiFlorio's bankruptcy filing. The concluding statement in the opinion is, "The lien on 90 Old Georgetown Road will remain, and as such, the sheriff's sale scheduled ... shall proceed." The court apparently denied Migliaccio's motion to stay the sale pending appeal.[6] The Somerset County Sheriff again levied on the Property on April 14, 2008. The writ was posted on the door after an attempt to serve Migliaccio proved unsuccessful. Migliaccio *394 appealed, and this court stayed the sheriff's sale pending our review.
On appeal, Migliaccio argues (1) the levy is void because the Sheriff did not first levy on DiFlorio's personalty; (2) plaintiff's lien was not perfected prior to the filing of DiFlorio's bankruptcy petition and the unsecured debt was discharged; (3) the court erred in allowing a collateral attack on DiFlorio's bankruptcy discharge; and (4) plaintiff is equitably barred from executing on the property.

II.

A.
Prior to analyzing the arguments presented on appeal, we must review some basic legal tenets. A judgment docketed by the Clerk of the Superior Court in Trenton, pursuant to Rule 4:47, becomes a lien on any real estate owned by the debtor. N.J.S.A. 2A:16-1; N.J.S.A. 2A:16-11; Lever v. Thomas, 340 N.J.Super. 198, 202, 774 A.2d 511 (App.Div.2001). "The judgment is a binding judicial determination of the rights and duties of the parties to the action and, when recorded ..., functions as notice of the debtor-creditor relationship." New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 411, 587 A.2d 1265 (1991). A properly docketed judgment serves as constructive notice of the lien to all, including subsequent purchasers, mortgagees and others who may deal with the real estate. Jones v. Parker, 107 N.J.Super. 235, 240, 258 A.2d 26 (App.Div.1969); Les Realty Corp. v. Hogan, 314 N.J.Super. 203, 207, 714 A.2d 366 (Ch.Div.1998). A recorded judgment is effective for twenty years. N.J.S.A. 2A:14-5. Within that time period, an execution may issue. N.J.S.A. 2A:17-3.
"At [] common law, real estate could not be sold for the payment of debts, and a creditor might have had large claims against the owners of land, without the power of collecting his debt." Voorhees v. Chaffers, 24 N.J.L. 507, 509 (Sup.Ct.1854). "To remedy this mischief, an act was passed by the General Assembly of the Province of New Jersey in 1743, (Neville's Laws, 279-80 and 81,) making real estate chargeable with debts and liable to be sold for their satisfaction, and authorizing the issuing of executions commanding the sheriff to make sale of the land for that purpose." Ibid.; Markouski, supra, 123 N.J. at 412, 587 A.2d 1265 (citing 17 George II, Allinson's Laws, pp. 129-32); see Clement v. Kaighn, 15 N.J. Eq. 47, 49 (Ch. Div.1862); N.J.S.A. 2A:17-17. When land is sold after entry of a judgment, the judgment passes with the land and the lien is not extinguished by the mere transfer of ownership. Markouski, supra, 123 N.J. at 412, 587 A.2d 1265.
Finally, it must be remembered that the lien on a debtor's real estate given to a judgment creditor is purely "a creature of statute." Brescher v. Gern, Dunetz, Davison & Weinstein, P.C., 245 N.J.Super. 365, 368-69, 585 A.2d 961 (App. Div.1991) (citing Joseph Harris & Sons, Inc. v. Van Loan, 23 N.J. 466, 470, 129 A.2d 571, (1957)); Jones, supra, 107 N.J.Super. at 242, 258 A.2d 26. A judgment lien holder has no greater rights than those granted by the statute, and the lien acquired encumbers no greater interest than that held by the debtor in the realty.

B.
Migliaccio maintains the writ of execution was void because plaintiff failed to conduct a diligent search for and levy upon DiFlorio's personal property prior to proceeding to levy upon the Property. Plaintiff disagrees asserting he exhausted all efforts to locate DiFlorio's personal property. *395 The motion judge was not persuaded by Migliaccio's argument. Based on the facts and circumstances presented, the judge concluded plaintiff had satisfied the obligation set forth in N.J.S.A. 2A:17-1 and made reasonable efforts to locate DiFlorio's personal property. Discovering none, the writ of execution was issued against the real estate. See Pojanowski v. Loscalzo, 127 N.J. 240, 242, 603 A.2d 952 (1992).
After obtaining and docketing a money judgment, pursuant to N.J.S.A. 2A:16-1, a creditor delivers a writ of execution to the sheriff. See N.J.S.A. 2A:17-10. It is the responsibility of the judgment creditor to prepare the writ, have it entered by the court clerk, see that it is delivered to the sheriff with instructions as to levying, and conduct discovery to locate and identify the property to be levied upon. Vitale v. Hotel Cal., Inc., 184 N.J.Super. 512, 519-20, 446 A.2d 880 (Law Div.1982). Upon receipt of the writ, the sheriff is first required to levy on the goods and chattels in the county, N.J.S.A. 2A:17-1, and, if insufficient, to levy on the real property held by the debtor. Ibid.
In order to comply with the requirements of N.J.S.A. 2A:17-1, the judgment creditor must make a good faith attempt to ascertain the location of the debtor's personalty within the county and supply this information to the sheriff along with the writ of execution. Raniere v. I & M Invs. Inc., 159 N.J.Super. 329, 337, 387 A.2d 1254 (Ch.Div.1978), aff'd, 172 N.J.Super. 206, 411 A.2d 719 (App.Div.), certif. denied, 84 N.J. 473, 420 A.2d 1298 (1980). "The proper focus is not whether there are assets in the county, or the amount of those assets, but rather whether a good faith effort was made to locate the assets." Ponticelli v. Dobin, 99 Fed. Appx. 414, 416 (3d Cir.2004).
Rule 4:59-1(e) delineates the permissive supplementary proceedings available to a judgment creditor in aid of execution. As noted, the test is not whether all possible measures to locate personalty have been undertaken, but rather has the judgment creditor exerted "reasonable efforts" in good faith to locate personal property. In re Mariano, 339 B.R. 344, 350 (Bankr. D.N.J.2006); Pojanowski, supra, 127 N.J. at 242, 603 A.2d 952; Raniere, supra, 159 N.J.Super. at 337-38, 387 A.2d 1254.
Here, plaintiff hired an investigator to determine whether DiFlorio had any personal assets and conducted a judgment search, which revealed thirty-two judgments had been filed against DiFlorio for a total indebtedness in excess of one million dollars. Moreover, by responding to interrogatories, DiFlorio certified under oath he owned no bank accounts, physical assets, accounts receivable or automobiles. Migliaccio generally alleges DiFlorio has personal assets, but offers no specifics.
Our review reveals the court's finding that plaintiff employed sufficient and reasonable efforts to locate DiFlorio's personal property is "supported by adequate, substantial and credible evidence" in the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). Migliaccio's argument to the contrary is, therefore, rejected.

C.
Next, we determine whether plaintiff's lien was perfected before DiFlorio filed his bankruptcy petition. In this regard, multiple questions arise, including whether the defect invalidating the writ directed to the Mercer County Sheriff was resolved by the issuance of a corrected writ and whether the corrected writ timely perfected plaintiff's lien.
*396 Migliaccio argues the April 24, 2006 writ was defective, as delivered to the Somerset County Sheriff, and thus, void ab initio. Without a valid writ, the Sheriff had no authority to execute the writ by posting it on her realty. Consequently, that act is void. Plaintiff, on the other hand, concedes the first writ may have contained a "clerical error," but argues the error was cured by the corrected writ. Thus, the Somerset County Sheriff was allowed to timely "assert dominion and control over the property" and proceed with its sale.
No one disputes the initial writ was defective. The question for our consideration is what effect results from misdirecting the writ to the Mercer County Sheriff. We locate no authority determining to the precise issue of whether a misdirection in a writ of execution renders the writ void or merely voidable. In answering this question, our review must begin with an examination of the language of the applicable statute.
In pertinent part, N.J.S.A. 2A:17-1 states:
In every writ of execution which shall be issued against real estate, the sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, ... the whole or the residue, ... of such debt, damages and costs or sum of money to be made of the real estate whereof such party was seized on the day when such real estate became liable to such debt[.]
[Emphasis added.]
Considering the plain language of the statute, Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987), a sheriff's authority to sell property located in the county to satisfy a judgment lien is granted solely by a valid writ of execution. Mushback v. Ryerson, 11 N.J.L. 346, 351 (Sup.Ct.1830); Stability Bldg. & Loan Ass'n v. Liebowitz, 132 N.J. Eq. 477, 479, 28 A.2d 653 (Ch.1942). The writ is the equivalent of a court order, which grants a sheriff authority he otherwise does not possess, to enter the land of another. Ibid.
"[A]t common law, no lien was acquired by a judgment." Sisco v. N.J. Bank, N.A., 158 N.J.Super. 111, 117, 385 A.2d 890 (App.Div.1978). Thus, the statute that allows a sheriff's sale of real estate to satisfy a debt markedly departs from common law. Vanderveere v. Gaston, 24 N.J.L. 818, 820 (E. & A. 1854); Warwick v. Hunt, 11 N.J.L. 1, 7 (Sup.Ct.1829). With this in mind, courts construing the legislative intent have required strict compliance with the statutory requirements. See Chaffers, supra, 24 N.J.L. at 511 ("The only safe course is to pursue the directions, and to obey the command of the statute."); Gaston, supra, 24 N.J.L. at 821 ("recording of an execution against lands [is] an essential element in giving validity to the writ, as an authority for the officer to levy and make sale."). "[I]n New Jersey it has been the established principle, ... making lands liable to be sold for the payment of debts, that the right of the sheriff to sell and convey lands, is a mere naked power, so that to render a title under his deed available, every requisite of the law must be shown to have been complied with[.]" Todd v. Philhower, 24 N.J.L. 796, 800 (E. & A. 1854).
From these authorities, we conclude the requirements in the statute are not merely directory but mandatory, such that the failure to comply with a statutory provision affects subsequent actions. Examining this matter, we do not agree with Migliaccio that the error presented  directing the writ to the Sheriff of one county (Mercer) for execution and process of realty purportedly located in that county, but actually delivering the *397 writ to the Sheriff of another county (Somerset) for execution and process of realty located therein  falls within the category of "clerical error." The misdirection is more than a purely technical mistake. We conclude the error is substantive and deprives the sheriff of all authority to take any action.
Clerical errors include misspellings, Black v. Seabrook Assocs., Ltd., 298 N.J.Super. 630, 637, 690 A.2d 142 (App. Div.1997), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997); administrative mistakes, Playmates Toys v. Dir., Div. of Tax., 162 N.J. 186, 187, 742 A.2d 968 (1999); typographical errors and errors in transposing, H.G.K.W. Corp. v. East Brunswick Tp., 8 N.J. Tax 454, 462 (Tax 1986); or mathematical miscalculations, McNair v. McNair, 332 N.J.Super. 195, 199, 753 A.2d 147 (App.Div.2000); Lockwood v. Walsh, 137 N.J. Eq. 445, 450, 45 A.2d 305 (Prerog.Ct.1946); see also R. 1:13 ("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may at any time be corrected by the court[.]").
The command in a writ of execution grants a county sheriff the authority to endorse the writ and post it on the property of another. N.J.S.A. 2A:16-1; R. 4:65-2. A writ has no force and can be of no effect outside the county for which it is issued. Therefore, the direction to the county officer named in a writ remains an essential element of a writ itself. A misdirection deprives the receiving sheriff of legal efficiency. The sheriff's mistaken belief that he had proper authority cannot validate his actions. Thus, the error naming the wrong county official to execute on property actually located in a different county must be deemed a material departure from the positive command of the statute. Raniere, supra, 159 N.J.Super. at 336, 387 A.2d 1254; see Morris Canal & Banking Co. v. State, 14 N.J.L. 411, 428, (Sup.Ct. 1834) (writ of certiorari directed to "commissioners" rather than "appraisers" delivered to and returned by the proper persons will not defeat the writ; however, misdirecting the writ to the appraisers rather than the clerks of the different counties in which the lands lay, who are the officials charged with maintaining the records sought by the writ, was fatal.). We are satisfied and, therefore, decide the misdirected writ was void, not merely voidable.
Once alerted to the initial writ's defect, plaintiff acted to obtain a corrective writ. The second writ was issued on September 1, 2006. That same day, a facsimile of the corrected writ was transmitted to the Sheriff of Somerset County prior to the scheduled sale date of September 5, 2006.[7] Plaintiff argues the Sheriff's receipt of the facsimile constituted statutory delivery, perfecting plaintiff's lien and granting the Sheriff the right to conduct the sale as scheduled. By analogy, plaintiff suggests this court take judicial notice that sheriffs accept facsimile copies of bankruptcy petitions to stay sheriff's sales following entry of judgments of foreclosure. We reject plaintiff's argument for the following reasons.
First, if the initial writ were void, any execution relying upon its apparent authority was not justified and cannot be sustained. See Ryerson, supra, 11 N.J.L. at 352 (if the sheriff had no authority under procedurally defective writ of execution, he could not, of his own volition, assume the authority to post and sell the subject realty). Issuance of the writ to the *398 Mercer County Sheriff placed in the hands of the Somerset County Sheriff was as if there were no writ at all. In posting the misdirected writ, the Somerset County Sheriff was no more than a trespasser on Migliaccio's property.
Because the Somerset County Sheriff had no authority when he posted the defective writ, the defective execution cannot be remedied by the Sheriff's receipt of an amended writ. If the writ is void, the levy is void. A new writ must issue, and the process must begin anew.
Second, plaintiff's lien was not perfected until the corrected writ was delivered to the Somerset County Sheriff, as evidenced by his endorsement on September 5, 2006. We elaborate further on this point.
Pursuant to N.J.S.A. 2A:17-10, "[n]o writ of execution shall bind the property or the goods of the person against whom such writ is sued forth, but from the time that such writ shall be delivered to the sheriff... or other officer, his deputy or agent, to be executed." The sealed document is delivered upon actual receipt evinced by the sheriff's endorsement of "the time, the day of the month and year when he received the same." N.J.S.A. 2A:17-11. "[T]he law requires the sheriff to receive and stamp for priority purposes" each writ in the order he receives them and "to accept such writs by taking them impartially ... one at a time and indorsing them, and it is such act in order of time that determines the official receipt, delivery and priority." Walton v. Hillier, 128 N.J.L. 119, 123, 24 A.2d 219 (E. & A. 1942); see also McAdams v. Mundy, 79 N.J.L. 480, 76 A. 1031 (1910) (levy relates back to the date the writ of execution is delivered to the sheriff).
The statutory requisites must be strictly followed to assure proper determination of the priority of interests. Although this record contains no evidence that a competing lien exists, it is illogical and unreasonable to create a separate rule to allow an oral delivery acknowledgement in such an instance.
Third, as to plaintiff's analogy of staying a sheriff's sale once a bankruptcy petition is faxed to the sheriff, we find the circumstance inapposite. The automatic stay is imposed by operation of law. 11 U.S.C.A. § 362(a). No further order or written notice is necessary. Ibid. In contrast, N.J.S.A. 2A:17-11 mandates the sheriff who receives a writ must act endorse it by stamping the date and time of delivery.
Accordingly, plaintiff's suggestion that an oral acknowledgement of receipt can be the basis to fix a party's interest cannot be supported. The Somerset County Sheriff's stamped date of delivery of the sealed writ was September 5, 2006. Thus, the execution and levy on Migliaccio's realty using the defective initial writ was improper; the Sheriff's execution is void and cannot be remedied by reissuing a corrected writ; and plaintiff's lien was not perfected until September 5, 2006, therefore, execution had not properly occurred.

III.
Our inquiry now turns to the issues related to the effect of DiFlorio's bankruptcy on plaintiff's judgment lien. Migliaccio argues plaintiff's debt was unsecured and subject to discharge. She maintains that without the underlying debt, plaintiff has no claim to perfect; therefore, a sale cannot proceed. Citing the trial court's conclusion, "Borromeo's lien was not subject to discharge or release pursuant to [11 U.S.C.A.] § 524 upon DiFlorio's discharge in bankruptcy," plaintiff disagrees that the bankruptcy filing affects his judgment lien.
*399 The opinion of the trial judge on this issue was based on (1) a mistaken understanding that DiFlorio failed to comply with 11 U.S.C.A. § 109(h)(1), which led the court to conclude he could not obtain a discharge as of the date he filed his petition;[8] and (2) the legal error that plaintiff's debt was perfected on September 1, 2008.
We have already addressed the legal error and stated our conclusion that the writ of execution was not delivered until September 5, 2006, after DiFlorio's bankruptcy filing. We briefly address the significance of the debtor's counseling certificate.
The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23, comprehensively amended the Bankruptcy Code. Newly added section 109(h)(1) requires consumer debtors, as a prerequisite to proceed with a bankruptcy case, to obtain information from an approved agency regarding available alternative opportunities to filing bankruptcy, such as credit counseling and assistance in performing a budget analysis for the purposes of repaying debts. Ibid. A debtor's failure to do so results in the dismissal of his or her bankruptcy case. Ibid.
The trial court mistakenly believed that not only had DiFlorio failed to comply with this prerequisite, but also misrepresented that he had done so. DiFlorio produced the proper certificate dated September 1, 2006, one day prior to his filing. We do not understand what caused this confusion, and we decline to address the legal rationale employed by the trial judge wherein she applied what she termed "equitable principles" flowing from this factual inaccuracy. The trial judge was mistaken in her concept of the applicable law.
Understanding plaintiff's judgment lien was not fully perfected on September 2, 2006, when DiFlorio pursued bankruptcy protection, we ask whether plaintiff's debt is subject to the discharge issued on April 20, 2007. A discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727[.]" 11 U.S.C.A. § 524(a)(1). The practical effect of a discharge is to eliminate all unsecured claims against the debtor, allowing the debtor's fresh start. In re Bearden, 382 B.R. 911, 923 (Bankr.D.S.C.2008). The Bankruptcy Code further provides, a debt will be discharged where the creditor has "`notice or actual knowledge of the case in time for [filing a proof of claim].'" Maldonado v. Ramirez, 757 F.2d 48, 50 (3d Cir.1985) (quoting 11 U.S.C.A. § 523(a)(3)(A)).
Plaintiff's obligation was scheduled as an unsecured claim, which, pursuant to 11 U.S.C.A. § 101(5), is something other than a secured, priority or administrative claim defined under the Bankruptcy Code. Plaintiff did not file an adversary proceeding to challenge the dischargeability of his claim. 11 U.S.C.A. § 523(a), and the clear language of the order of discharge applies to plaintiff's claim. Thus, effective September 1, 2006, plaintiff's claim was discharged.
Our inquiry does not end there. The viability of a statutory judgment lien, which arises "solely by force of a statute on specified circumstances or conditions," 11 U.S.C.A. § 101(53), may survive discharge to the extent of the debtor's interest in the real property. Chemical Bank v. James, 354 N.J.Super. 1, 8, 803 A.2d *400 1166 (App.Div.2002). "[T]the majority of courts ... hold that the Bankruptcy Code and its legislative history plainly establish... that valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt." Estate of Lellock v. Prudential Ins. Co., 811 F.2d 186, 189 (3d Cir.1987) (footnote and citations omitted).
On this point, the parties raise various arguments to justify or oppose possible discharge. For example, both parties present arguments regarding the applicability of N.J.S.A. 2A:16-49.1, which allows a state court to discharge of record a judgment lien under certain conditions following receipt of a bankruptcy discharge. In support of their positions, the parties rely on our determinations in The Party Parrot, Inc. v. Birthdays & Holidays, Inc., 289 N.J.Super. 167, 673 A.2d 293 (App.Div. 1996) and Associates Commercial Corp. v. Langston, 236 N.J.Super. 236, 565 A.2d 702 (App.Div.), certif. denied, 118 N.J. 225, 570 A.2d 979 (1989). Each of these opinions interpreted the debtor's ability to employ the discharge provisions of N.J.S.A. 2A:16-49.1. In this matter, we agree with the trial judge that DiFlorio has not filed a motion to direct the cancellation and discharge of plaintiff's judgment under the statute. As a result, we decline to review the issue.
Also inapplicable is Migliaccio's reference to the power to avoid a judgment lien expressed in 11 U.S.C.A. § 544(a). This section of the Bankruptcy Code vests powers in the Chapter 7 trustee, who can exercise the power to preserve assets for the benefit of the creditors of the debtor's estate. In re Cybergenics Corp., 226 F.3d 237, 243 (3d Cir. 2000). A Chapter 7 debtor cannot implement a trustee's avoidance powers.
As we view the matter, a statutorily created judgment lien survives a debtor's discharge in bankruptcy and attaches to realty only to the extent the debtor held an interest subject to be levied upon and sold under execution. The fundamental issue that was not considered by the trial court is whether DiFlorio held such an interest in the Property, which is now owned by Migliaccio. Under his agreement with the Tranis, DiFlorio acquired what was called an "equitable interest" to a portion of the whole Property. Plaintiff suggested, in oral argument before us, recording the Agreement essentially made it a deed, notwithstanding the contrary language employed in the Agreement. We disagree with such a broad proposition. See John S. Westervelt's Sons v. Regency, Inc., 5 N.J.Super. 231, 235, 68 A.2d 755 (App.Div.1949) (describing requisites of a deed), aff'd, 3 N.J. 472, 70 A.2d 767 (1950).
Generally, labels employed by parties are not controlling. See In re Tideland's License 96-0114-T, 326 N.J.Super. 209, 218, 740 A.2d 1125 (App.Div.1999) (it is the intent of the parties that is determinative of what has been conveyed by a deed, not the labels); Claremont Health Sys., Inc. v. Point Pleasant Borough, 16 N.J. Tax 604, 623 (Tax Ct.1997) (document entitled "deed" was found to be long term-lease interest). Moreover, the mere recording of the document does not make it a deed. Ibid. "[T]he prime consideration in determining the meaning of the basic title instruments is the intention of the parties[,]" Normanoch Ass'n v. Baldasanno, 40 N.J. 113, 125, 190 A.2d 852 (1963), "`as revealed by the language used, taken as an entirety[.]'" Conway v. 287 Corporate Ctr. Assocs., 187 N.J. 259, 269, 901 A.2d 341 (2006) (quoting Atlantic N. Airlines v. Schwimmer, 12 N.J. 293, 302, 96 A.2d 652 (1953)).
On remand, the trial court must consider the nature and value of DiFlorio's interest in the Property. The court must *401 examine the terms of the Agreement, including limitations or qualifications of the stated interests, particularly with respect to the limitations on alienation, hypothecation or other transfer, indemnification and termination to decide whether DiFlorio's interest is legal or equitable. If DiFlorio's interest is an equitable one, the trial court must decide whether such an interest may legally be subject to attachment, pursuant to N.J.S.A. 2A:16-1. If the trial court concludes attachment is valid, the value of DiFlorio's interest, subject to the attachment, must be ascertained. Therefore, additional proceedings, which may include a plenary hearing, are necessary.
With respect to a determination on the validity of the judgment lien, we are aware that the court may consider whether any transfer was fraudulent and designed to evade creditors. However, such a conclusion cannot be supported on this record, and any finding in that regard cannot be sustained. We specifically refer to a statement contained in the trial judge's opinion wherein the court recited findings made following the August 16, 2006 motion. The trial judge stated: "The [c]ourt found that there appeared to be collusion between Migliaccio and DiFlorio, specifically that the transfer of the [P]roperty from DiFlorio to the Tranis, and then to Migliaccio appeared to be a scheme to hide DiFlorio's assets from his creditors." This statement concisely summarized plaintiff's theory presented in argument. However, no testimony, stipulations, or documentary evidence provided a factual basis to support such a factual finding upon which the court could rely. R. 1:7-3.
The record does reflect Migliaccio and DiFlorio were not strangers; they were lovers, who lived and raised their children together and had common business interests. The record also includes evidence of a scheme involving both Migliaccio and DiFlorio to evade obligations imposed by the Department of Environmental Protection and avoid certain creditors' claims asserted against an interest in a business. Further, a strong presumption can be drawn from their established relationship that Migliaccio knew of DiFlorio's financial difficulties. Yet, contrary to the court's finding, DiFlorio never hid his interest in the Property. The Agreement was recorded. We find no evidence to sustain a finding that Migliaccio's purchase of the Property was collusive or integral to a "scheme to hide DiFlorio's assets from his creditors."
Also, the trial judge grossly overstated DiFlorio's initial contribution to acquire his "equitable interest" under the Agreement. The court recited DiFlorio paid $450,000 for the Property, yet the Agreement unmistakably details that sum as the realty's total purchase price and the Tranis secured a $300,000 mortgage from Travelers Mortgage Services, Inc., for the realty's acquisition. Thus, DiFlorio's fifty-percent contribution would have been approximately $75,000.
As reflected in the recorded documents, Migliaccio paid the Tranis significant consideration for the Property, including all mortgage and tax payments for ten years and, therefore, a lump sum of over $250,000. The contrary findings made by the trial court are rejected as unsupported. Before the trial court can make a determination that Migliaccio and DiFlorio engaged in fraudulent conduct, it must conduct a plenary hearing.

IV.
The additional arguments raised by each party, which were not presented below will not be addressed on appeal. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
In summary, we affirm the trial court's determination that plaintiff properly employed reasonable efforts to locate DiFlorio's *402 personalty prior to proceeding with his execution upon real property interests. The writ of execution, issued April 24, 2006, is void and any acts in execution of that writ are void. The second writ was delivered to the Sheriff on September 5, 2006, however, execution of that writ has not been effectuated. As a result, the notice of sale is void and the sheriff's sale may not proceed. That portion of the trial court's order is reversed.
DiFlorio's bankruptcy discharged plaintiff's claim. However, we cannot determine whether the judgment lien legally attached to the property, and, if it did, to what extent, if any, may it be enforced against the Property. These issues are remanded to the trial court for further proceedings, including a plenary hearing, as necessary.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
NOTES
[1] There are documents in the record, which list the common name of the Property as 556 Old Georgetown Road. We have no reason to question each of these designations, 90 Old Georgetown Road and 556 Old Georgetown Road, refer to the same realty.
[2] The current status of the relationship between DiFlorio and Migliaccio is unclear. During the August 16, 2006 hearing, it was represented that the two no longer lived together.
[3] The execution documents only refer to Block 9, Lot 45 and do not mention Lot 45Q.
[4] Monday, September 4, 2006, was Labor Day and the Sheriff's Department was closed.
[5] We note Migliaccio also raised an issue regarding the validity of the corrected writ, which failed to comply with Rule 4:59-1(a), as he did not include an affidavit explaining the method by which interest was calculated up to the date of its delivery to the Sheriff. We need not address this issue, as it was not raised on appeal.
[6] The record contains no written order accompanying the court's written opinion and no order denying Migliaccio's request for a stay.
[7] Plaintiff's suggestion that the Somerset County Sheriff told him the writ's "hand delivery was unnecessary as a facsimile copy would be sufficient to bind his office" is unavailing. The Sheriff's comment has no legal impact.
[8] DiFlorio had recently filed his bankruptcy petition when the motion was argued. Nevertheless, when the trial court rendered its opinion, DiFlorio had been discharged.