**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0491-17T1

A&S CHECK CASHING, INC.,

 Plaintiff-Respondent,

v.

RAPID CHECK CASHING, INC.,

 Defendant-Appellant,

and

DOMENICK PUCILLO,

 Defendant.

_____

  Argued September 18, 2018 – Decided October 19, 2018

  Before Judges Yannotti and Gilson.

  On appeal from Superior Court of New Jersey, Law Division, Hudson County, L-0941-13.

  Paul I. Perkins argued the cause for appellant (Perkins Law Offices, attorneys; Paul I. Perkins, on the briefs).

  Stuart Reiser argued the cause for respondent (Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, attorneys;

Stuart Reiser and Alexander G. Benisatto, on the briefs).

PER CURIAM

Plaintiff A&S Check Cashing, Inc. (A&S) obtained a judgment for $280,295.25 against defendant Rapid Check Cashing, Inc. (Rapid). A&S thereafter learned that Rapid had sold its assets to New Loan Co., Wm. S. Rich & Son, Inc. (New Loan) under an asset purchase agreement (AP Agreement). New Loan also had purchased the assets of Tri-State Check Cashing, Inc. (Tri-State) as part of that same AP Agreement. The AP Agreement provided that New Loan was to pay the "Seller," which was defined as Rapid and Tri-State.

A&S served writs of execution on New Loan to satisfy its judgment against Rapid from the purchase price of the AP Agreement. A&S also filed a motion to compel the turnover of the funds. Rapid appeals from an August 18, 2017 order directing New Loan to turn over funds due to Rapid as the "Seller" under the AP Agreement to satisfy the judgment.[1] We affirm. Under the plain language of the AP Agreement, Rapid was entitled to the purchase price and

---

[1] Tri-State, a non-party that was aggrieved by the August 18, 2017 order, filed the notice of appeal. See Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 207-08 (App. Div. 2009) (noting an aggrieved non-party has standing to appeal). Tri-State is not an intervenor. As such, the appeal is pursued by defendant Rapid and all references to arguments made on appeal are attributed to Rapid.

A-0491-17T1

A&S, as a judgment creditor of Rapid, was entitled to satisfy its judgment from that asset.

## I.

This appeal arises out of A&S's efforts to collect on a judgment against Rapid. In February 2013, A&S filed an action against Rapid. The parties did not inform us of the underlying dispute between A&S and Rapid. It appears, however, that A&S had sold a check-cashing business to Rapid and Rapid had failed to pay A&S. A bench trial was conducted on March 20, 2015, and the court found that A&S was entitled to a judgment. On April 6, 2015, the court entered a judgment in favor of A&S finding that Rapid owed A&S $280,295.25. The judgment was recorded as a lien against Rapid on April 27, 2015.

Thereafter, A&S engaged in efforts to collect on the judgment. It learned that in March 2015, Domenick Pucillo, the owner of Rapid, had entered into the AP Agreement and sold substantially all of Rapid's assets to New Loan. In the same AP Agreement, Pucillo also sold the assets of Tri-State, another check-cashing business Pucillo had owned. The AP Agreement stated that New Loan was to pay the purchase price to "Seller." "Seller" was defined as "TRI-STATE CHECK CASHING, INC. and RAPID CHECK CASHING, INC., New Jersey

A-0491-17T1

Corporations having a principal place of business at 17 Avenue A, Newark, New Jersey."

The AP Agreement set forth the calculation and time for payment of the "Purchase Price." In that regard, paragraph 2A of the AP Agreement provides:

> Calculation of Purchase Price. The Purchase Price shall be 50% of all fees for Tri-State Check Cashing, Inc., only and not Rapid Check Cashing, Inc. (including but not limited to check cashing fees, Western Union and Money Gram) not including pawn broker's fees received by Purchaser commencing on the date of closing. The aforementioned sum shall be paid to seller on the 1st day of the twenty-fifth (25th) month following [the New Jersey Department of Banking and Insurance (Department of Banking)] approval.

The parties represent that the Department of Banking gave the relevant approval on June 1, 2015.[2] Accordingly, the purchase price was due to be paid on July 1, 2017.

To satisfy its judgment against Rapid, on May 28, 2015, A&S served a writ of execution on New Loan that called for the turnover of any monies due to Rapid. A&S also obtained a court order compelling New Loan to provide an accounting of the amount due for the purchase price. Eventually, New Loan

---

[2] The parties did not include in the record the written approval from the Department of Banking. Instead, A&S submitted a certification stating that the approval was obtained on June 1, 2015, and Rapid does not dispute that approval date.

A-0491-17T1

served an accounting, which showed that $374,455.89 was due as the purchase price under the AP Agreement. Thereafter, on June 20, 2017, A&S caused a new writ of execution to be served on New Loan.

On June 23, 2017, A&S filed a motion to compel the turnover of the monies from the purchase price due under the AP Agreement to satisfy its judgment against Rapid. Rapid opposed that motion arguing that (1) the term "seller" in paragraph 2A of the AP Agreement meant Tri-State and not Rapid, and that the purchase price was due only to Tri-State; (2) the parties to the AP Agreement did not intend that Rapid receive any of the purchase price; and (3) alternatively, Rapid was only entitled to 50% of the purchase price (that is, $187,227.95) and, thus, only that amount should be turned over to A&S.

To support those positions, Rapid submitted the certification of Pucillo. Pucillo certified that he was the principal of Tri-State and Rapid. He went on to contend that Rapid was a "defunct and non-functioning entity" when the AP Agreement was signed. He asserted that because Rapid was not generating any revenues, it was expressly excluded from the calculation of the purchase price under paragraph 2A of the AP Agreement. He also contended that the "seller" in paragraph 2A of the AP Agreement "was meant to be Tri-State because it was the only party generating revenue, it was only right that Tri-State was the

recipient of the revenue."  Finally, he contended:  "It was neither I, nor New Loan's intention that Rapid receive any of the proceeds of the sale of Tri-State."

New Loan also submitted a certification from its president, Irwin Sablosky.  Sablosky did not state that there was any mutual mistake concerning the AP Agreement.  Instead, Sablosky certified:

> Counsel for the [Seller][3] requested that the purchase price be based upon fees generated by Tri-State and I had no reason to object.  In fact, the physical assets of both companies were minimal, consisting of old furniture and some computers.  The purpose of the acquisition was the potential check-cashing business and the locations.  My companies have no stake in the outcome of the pending motion.  The fees generated by the sale will either go to the [Seller] or some part thereof to the moving party [that is, A&S].  I want to make it clear that how the monies are paid is not my concern and I will abide by the Court's decision.

The trial court rejected Rapid's contentions.  Accordingly, on August 18, 2017, the trial court entered an order directing New Loan to turn over $280,295.25, plus interest and costs, from the funds due under the AP Agreement.  On September 6, 2017, the order was amended to compel the turnover of the funds to satisfy the judgment within twenty-one days and directed that any remaining funds due under the AP Agreement be paid to Tri-

---

[3]  In his certification, Sablosky refers to "Purchaser," but since New Loan was the purchaser, it appears he meant Seller.

A-0491-17T1

State and Rapid.  With the addition of interest through September 8, 2017, the judgment totaled $281,994.39.

The trial court explained its rulings in a written statement of reasons.  The court found that the terms of the AP Agreement were clear and unambiguous.  Specifically, the court held that the term "Seller," as used in the AP Agreement, meant both Rapid and Tri-State.  The court also found that there was no ambiguity created by the word "seller" in paragraph 2A of the AP Agreement, which is the paragraph explaining how the purchase price was to be calculated and when it was to be paid.  The court then rejected Rapid's argument that only Tri-State was to receive the purchase price.  It reasoned that the plain language of the AP Agreement did not support that position, and Rapid's contention was not supported by the certification submitted by Sablosky, the president of New Loan.  The court also rejected Rapid's contention that A&S was entitled to only 50% of the purchase price because Rapid and Tri-State were separate entities.  The trial court again pointed out that the AP Agreement defined "Seller" as Rapid and Tri-State.  Finally, the court rejected the contention that the AP Agreement should be reformed.  In that regard, the trial court noted there was no evidence of a mutual mistake because New Loan did not contend that there was any mutual mistake in the AP Agreement.

A-0491-17T1

II.

Rapid now appeals the August 18, 2017 order. Rapid makes two arguments on appeal: (1) the trial court should have held a hearing to determine the intent of the parties concerning the AP Agreement; and (2) Tri-State is entitled to 50% of the purchase price, and the court erred in ordering a portion of the monies due to Tri-State to be turned over to A&S. We are not persuaded by either of these arguments and we affirm.

The issues presented on this appeal are purely legal questions because they involve the interpretation of the AP Agreement. Accordingly, our review is de novo. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015) (quoting Fair Share Hous. Ctr., Inc. v. N.J. State League of Municipalities, 207 N.J. 489, 493-94 n.1 (2011)).

More specifically, the issues are controlled by the language of the AP Agreement. That language is unambiguous. The AP Agreement defines the term "Seller" as Rapid and Tri-State. Nothing in the AP Agreement suggests that the purchase price was to be paid only to Tri-State. Moreover, no language in the AP Agreement suggests that Rapid could collect only 50% of the purchase price. Instead, Rapid and Tri-State had the right to collect the full purchase price. Obviously, if one of them collected 100% of the purchase price, how they

distributed and allocated that money between them would be an issue they would address.

As a judgment creditor, A&S is entitled to satisfy its judgment from any of Rapid's assets.  See N.J.S.A. 2A:17-1; see also Borromeo v. DiFlorio, 409 N.J. Super. 124, 137 (App. Div. 2009); Canger v. Froysland, 283 N.J. Super. 615, 621 (Ch. Div. 1994).  Rapid sold its assets to New Loan, but retained the right to collect the purchase price under the AP Agreement.  Before any of the purchase price was due to be paid, A&S served writs of execution on New Loan compelling the turnover of the monies due to Rapid.  The trial court, therefore, correctly determined that New Loan was required to turn over the full amount to satisfy the judgment because the purchase price under the AP Agreement ($374,455.89) exceeded the amount of the judgment obtained by A&S ($281,994.39).

Rapid contends that there was a factual dispute concerning the intent of the parties to the AP Agreement and, therefore, there needed to be an evidentiary hearing.  Specifically, Rapid submitted the certification of Pucillo in which he contended that the purchase price was to be paid to Tri-State and not Rapid.  The plain language of the AP Agreement rebuts that contention.  When the language of a contract is clear, extrinsic evidence cannot be submitted to try to vary the

unambiguous terms of the written contract. <u>Schor v. FMS Fin. Corp.</u>, 357 N.J. Super. 185, 191-92 (App. Div. 2002); <u>Great Atl. & Pac. Tea Co. v. Checchio</u>, 335 N.J. Super. 495, 501 (App. Div. 2000).

Rapid also contends that if the AP Agreement was not clear in directing the payment to be made to Tri-State, then there was a mutual mistake and the contract should be reformed. The record demonstrates that there was no mutual mistake. The president of New Loan submitted a certification, but he did not contend that there was a mutual mistake. Instead, he expressly stated that he had no objection to how the purchase price was calculated and he did not care to whom the purchase price was paid.

Finally, nothing in the AP Agreement supports Rapid's alternative argument that Rapid was entitled to only 50% of the purchase price. Instead, as already pointed out, Rapid or Tri-State had the right to receive the full purchase price.

Affirmed.[4]

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Two days before oral argument, Rapid sent us a letter referencing a separate matter involving a dispute over the validity of New Loan's license to operate a check-cashing business at the Irvington location, which was the location from which Rapid operated. To the extent that there is a dispute over the license, that issue is not before us. The record does not reflect that Rapid or New Loan raised with the trial court an issue concerning the validity of the Irvington license.

A-0491-17T1

Instead, the record reflects that New Loan was to pay the purchase price under the AP Agreement. In accordance with the court's order, $281,994.39 of that purchase price should have already been turned over to A&S to satisfy its judgment and the remainder should have been paid to Tri-State and Rapid. If there is an issue concerning whether New Loan received full consideration under the AP Agreement that issue is between New Loan and Rapid.

A-0491-17T1